**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 08a0204n.06
Filed: April 17, 2008

**No. 07-3124**

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

| | | |
|---|---|---|
| SAMUEL HARRIS, | ) | |
| | ) | ON APPEAL FROM THE |
| Plaintiff-Appellant, | ) | UNITED STATES DISTRICT |
| | ) | COURT FOR THE SOUTHERN |
| v. | ) | DISTRICT OF OHIO |
| | ) | |
| CITY OF ST. CLAIRSVILLE, OHIO; AL DAVIES; | ) | |
| DENNIS BIGLER; DICK BOWER; DON | ) | |
| SMITHBURGER; FRANK SABATINO; JIM | ) | |
| WEISGERBER; JOHN BARKMIR; JOHN SWAN; | ) | |
| LINDA BURCH; PATRICIA BRUHN; MAYOR | ) | |
| ROBERT VINCENZO; THOMAS MURPHY; TIM | ) | |
| PORTER; RICHARD BAUER; SHELLY FORTNEY; | ) | |
| JILL A. LUCIDI; and JACK J. KIGERL, | ) | |
| | ) | |
| Defendants-Appellees. | ) | |
| _____ | ) | |

BEFORE: BOGGS, Chief Judge, BATCHELDER, and GRIFFIN, Circuit Judges.

GRIFFIN, Circuit Judge.

In this matter of alleged "wrongful annexation," plaintiff Samuel Harris claims, inter alia, that defendant City of St. Clairsville, a number of its officials, and attorney Jack Kigerl conspired to deprive him of his property. Harris relies almost entirely upon inadmissible proposed exhibits and unsupported or untenable legal theories. For the reasons stated below, we affirm the district court's grant of summary judgment in favor of defendants.

I.

Plaintiff Samuel Harris was the owner of two parcels of real property near St. Clairsville, Ohio ("City"). One parcel was adjacent to Interstate 70 ("Interstate Property") and was originally located outside of the City. The other parcel contained the Terrace Mobile Home Park ("Terrace Property") and was within City limits.

Harris argues that the City and other defendants, "engaged in a scheme for the purpose of forcing Plaintiff to part with a portion of Plaintiff's interstate property." Harris claims that defendants generated false bills for utility services, attempted to enforce those bills through liens on the Terrace Property, and wrongfully annexed his Interstate Property into the City.

Harris sued defendants as a group, seeking compensatory and punitive damages and a court order "de-annexing" his Interstate Property. The City, its various officials, and attorney Jack Kigerl separately filed motions for summary judgment. The district court ultimately granted six separate motions for summary judgment in favor of defendants. Harris timely appealed.

## II.

The district court granted summary judgment to the City, holding that: (1) the annexation of Harris's property was valid, (2) Harris had not been denied his substantive or procedural due process rights, (3) Harris failed to exhaust his administrative remedies, and (4) there was no taking in violation of the Fifth and Fourteenth Amendments.

## A.

Harris attached forty-four exhibits to his response in opposition to defendants' motions for summary judgment. The district court struck thirty-three of these exhibits, ruling that "[a]lthough

a party must produce evidence in support of its opposition to a motion for summary judgment, not all types of evidence are permissible." *See Wiley v. United States*, 20 F.3d 222, 225-26 (6th Cir. 1994) ("it is well settled that only admissible evidence may be considered by the trial court in ruling on a motion for summary judgment." (quoting *Beyene v. Coleman Sec. Servs., Inc.*, 854 F.2d 1179, 1181 (9th Cir. 1988))).  Harris relies on these excluded exhibits to support many of his substantive arguments, so as a threshold matter we must consider whether the district court properly excluded these exhibits.

On appeal, we review the decisions of the district court regarding evidentiary matters for an abuse of discretion.  *See Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899, 906 (6th Cir. 2006) ("We will not overturn a district court's decision to grant or deny a motion to strike an affidavit unless the lower court abused its discretion." (citing *Int'l Union, United Automobile, Aerospace and Agricultural Implement Works of America v. Aguirre*, 410 F.3d 297, 304 (6th Cir. 2005))).  The district court abuses its discretion when it "relies on erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Reeb v. Ohio Dep't of Rehab. and Corr.*, 435 F.3d 639, 644 (6th Cir. 2006).  Furthermore, we will "only reverse when 'such abuse of discretion has caused more than harmless error.'" *McCombs v. Meijer, Inc.*, 395 F.3d 346, 358 (6th Cir. 2005) (quoting *Cooley v. Carmike Cinemas, Inc.*, 25 F.3d 1325, 1330 (6th Cir. 1994)).  "We shall, therefore, reverse the lower court only if we are 'firmly convinced that a mistake has been made.'" *Id*. (quoting *Morales v. Am. Honda Motor Co., Inc.*, 151 F.3d 500, 516 (6th Cir. 1998)).

The district court struck Exhibits 1, 2, 3, 4, 5, 12, and 13 because they were "unauthenticated, self-generated billing records." Exhibits 7, 9, 10, 20, and 24 were struck because they were copies of unauthenticated letters and correspondence. The district court found similar deficiencies with many of the other exhibits. The district court struck Exhibit 8 because it was an unauthenticated photocopy of a cashier's check, Exhibit 15 because it was an unsigned settlement statement, Exhibit 16 because it was an unauthenticated copy of a complaint filed by St. Clairsville Municipal Utilities against Harris, and Exhibit 18 which is identified only as "sample accounts." Exhibits 19 and 23 were rejected as being copies of work order requests, Exhibit 25 is a portion of a police department work log, Exhibit 36 is a power of attorney, and Exhibit 39 is a fax cover sheet. Ultimately, the district court struck Exhibits 1, 2, 3, 4, 5, 7, 8, 9, 10, 12, 13, 14, 15, 16, 17, 18, 19, 20, 22, 23, 24, 25, 26, 27, 28, 29, 31, 34, 35, 36, 37, 38, and 39. Harris argues that all of the exhibits were admissible.

Plaintiff's first claim of error concerns the ruling striking Exhibits 14, 22, 26, 34, 35, 37, and 38.[1] The district court struck these exhibits because they "are merely portions of deposition

---

[1]The document entitled "Plaintiff's Exhibit List to Accompany Plaintiff's Responses to Motions for Summary Judgment," lists the following descriptions for these documents:

| | |
|---|---|
| Exhibit 14: | Davies Deposition |
| Exhibit 22: | Vincenzo Deposition |
| Exhibit 26: | McCamic Deposition at pages 18-21 |
| Exhibit 34: | Murphy Deposition of April 3, 2006 |
| Exhibit 35: | Murphy Deposition of June 27, 2006 |
| Exhibit 37: | Davies Deposition |
| Exhibit 38: | Fortney Deposition |

transcripts all of which are unaccompanied by a court reporter's certification. Moreover, the record does not contain a complete certified copy of these depositions" Harris argues that attaching portions of the transcripts rather than the entire transcript is required by Local Rule 7.2(e). Harris further argues that "many of these transcripts were already filed in their entirety with the Court."[2] He also claims that he filed court reporter certifications for these transcripts on October 27, 2006.

The City acknowledges that "the trial court's decisions seem to be in conflict on whether these documents were or were not considered." The City concedes that the district court accepted the filing of "court reporter certification pages for certain depositions," and that "[l]ater, however, the trial court refused to consider those documents." To the extent that this was a procedural error, and the City seems to admit that there was possible error here, the City stated that it had no objection to this court giving full consideration to any certified depositions that appear in the record. However, the City contends that Harris did not file certification pages for the depositions of Jeff McCamic (Exhibit 26), Albert Davies (Exhibit 37), Shelley Fortney (Exhibit 38), or the June 27, 2007, deposition of Thomas Murphy (Exhibit 35).

Harris cites to a district court order for the proposition that the district court accepted these court reporter certifications and declared that they would be "included as evidence that this Court will consider in pending motions for summary judgment." The district court document merely states that "[t]he affidavit of Ray Fraley and certifications from the court reporters are to be included as

---

[2]However, Harris states that some of them were not assigned docket numbers by the district court.

evidence that this Court will consider in pending motions for summary judgment." This document, standing alone, only applies to the affidavit of Ray Fraley "and certifications from the court reporters." None of the descriptions of Exhibits 14, 22, 26, 34, 35, 37, and 38 mention Ray Fraley, and it is not clear from the referenced document which "certifications from the court reporters" Harris intends to reference here—the document does not specify which records were certified.

If the certifications are in the record, Harris should cite to them; merely citing to a document that vaguely references court reporter certifications—without describing which documents were being certified—does not give us enough information to evaluate the district court's resolution of this issue. We must assume that the district court is familiar with its docket and is aware of the items that have been certified. If it has abused its discretion, Harris must notify us of that error with enough specificity for us to determine the accuracy of his claim. He has simply not given us enough information with which to determine whether the district court erred; a general invitation to comb through the record and the lower court's docket does not meet this burden. *See United States v. Lancaster*, 501 F.3d 673, 682 n.4 (6th Cir. 2007) ("'[I]ssues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation are deemed waived.'") (quoting *United States v. Robinson*, 390 F.3d 853, 886 (6th Cir. 2004)). Therefore, we affirm the district court's decision to exclude Exhibits 14, 22, 26, 34, 35, 37, and 38.

Harris also appeals the district court's ruling excluding Exhibit 27. Exhibit 27 is described as "Expert testimony on forgery – Fraley report." The totality of Harris's argument is as follows: "Likewise, the Court erred by striking the expert report, which the Court also held on October 27,

2006 would be accepted into the record." Harris then quotes the same district court order that he used to support his previous argument: "The affidavit of Ray Fraley and certifications from the court reporters are to be included as evidence that this Court will consider in pending motions for summary judgment." The City argues that the district court actually did rely on portions of Fraley's affidavit, despite its statement that it was excluding it as unauthenticated.

The district court's statement that Fraley's affidavit would be included as evidence seems to conflict with its decision to strike Exhibit 27 as unauthenticated. The City offers that, "[i]nsomuch as this appears to be a procedural error, Appellee has no objection to this Court giving full consideration to Mr. Fraley's affidavit . . . ." There is another possibility—although this is not mentioned by the parties. Perhaps the district court's objection to Harris's filing was that it relied on Fraley's report as an attached exhibit, instead of citing to the copy of Fraley's report that had already been authenticated and entered into the record. It is certainly understandable that the district court would want to rely upon the authenticated copy of the report in the record, rather than an attached exhibit that claims to be the same document but is not separately authenticated.

The burden is on Harris to show, not only that the district court erred, but that the district court abused its discretion and its error was harmful. *McCombs*, 395 F.3d at 358. Harris has not made this showing. He has argued error, but has not argued that the district court abused its discretion or that the outcome would have been different but for that error. Thus, we affirm the district court's decision to exclude Exhibit 27 as unauthenticated.

Harris also claims that the district court erred by excluding Exhibit 16, a copy of a complaint filed against Harris by St. Clairsville Municipal Utilities. Harris argues that the "complaint became part of the record before the Court because that case was removed from Ohio state court and became part of this proceeding as Case No. C2-05-1035. Indeed, that complaint forms the defendant's counterclaim." Harris is correct that the complaint is already part of the record, which begs the question of why he attached it as an exhibit rather than citing to the version of the document that was already in the record. It is perfectly reasonable for the district court to require the parties to cite to record documents rather than reattach those same documents. Otherwise, the district court must compare the two to ensure that they are identical and that would be an obvious waste of judicial resources. Harris has also not shown that the district court abused its discretion or that he was prejudiced by the district court's decision to exclude Exhibit 16. We affirm the district court's exclusion of Exhibit 16 for lack of authentication.

Next, plaintiff challenges the district court's exclusion of Exhibits 28, 29, and 31. The City objected to these exhibits because they were undated and none of the individuals were included in Harris's FED. R. CIV. P. 26(a) disclosures or otherwise disclosed as being potential witnesses. The district court struck these exhibits, noting that "none of the individuals named in Exhibits 28, 29, 31 were included in [Harris's] Rule 26(a) initial disclosures or otherwise disclosed as witnesses by [Harris]. Moreover, [Harris] breached his duty to supplement his 26(a) disclosures when he decided to add a witness that he did not initially disclose." The district court did not discuss the City's objection that the exhibits were undated, but it did note that Exhibit 31 was improperly notarized.

Harris argues that the City knew of Rice's involvement, but presents nothing to rebut the district court's determination that the City was not informed of Novotny's or Howard's involvement. Regardless, Harris has not shown error that the district court abused its discretion or that this was anything more than harmless error. It is Harris's responsibility to show how the district court's exclusion of these exhibits prejudiced the outcome; in the absence of such a showing, we must affirm.

Harris also appeals the district court's decision to strike Exhibits 7, 8, 10, 36, and 39.[3] The district court struck Exhibits 7 and 10 because they "are copies of unauthenticated letters and correspondence," and it struck Exhibit 8 because it was an unauthenticated copy of a cashier's check. The district court struck Exhibits 36 and 39, finding that they had not been properly identified and that "Plaintiff should have introduced these exhibits into the record through affidavits or exhibits to depositions rather than submit them improperly by filing them as a collection of papers with the Court without authentication."

Plaintiff argues that these documents were introduced into the record as deposition exhibits. Specifically, he argues that Exhibits 7 and 8 were introduced as exhibits to the Lucidi deposition, Exhibit 10 was an exhibit to the Davies deposition, and Exhibits 36 and 39 were exhibits to the Kigerl and Vincenzo depositions. The City admits that Albert Davies authenticated Exhibit 10 in his deposition and that Kigerl identified Exhibit 39 in his deposition, but correctly notes that mere

---

[3]Exhibit 7 is described as "Letter from Jill A. Lucidi to Samuel Harris with copy of receipt," Exhibit 8 is described as "Cashier's check," Exhibit 10 is "Letter from Albert E. Davies to Mike R. Ryan," Exhibit 36 is "Power of Attorney," and Exhibit 39 is "Fax Cover Sheet."

identification does not make these exhibits admissible. Harris has not shown how the district court's decision to strike these exhibits was an abuse of discretion or anything more than harmless error. To further complicate matters, Harris has not supported his argument with any citation to the record other than a general declaration that these documents had been authenticated in various depositions. The district court apparently declined the invitation to search its own docket and compare the exhibits to documents within the record, and we cannot blame it for doing so. *See Lancaster*, 501 F.3d at 682 n.4. Harris had the burden of establishing an abuse of discretion, and he has not supported his argument with citations to the record or shown that—even if there was an error—it was somehow prejudicial to his claim. We affirm the district court's decision to strike Exhibits 7, 8, 10, 36, and 39.

Harris's final evidentiary objection is a general statement that "the district court erred by striking the remainder of the exhibits."[4] Harris argues that "the defendants never questioned the accuracy or actual authenticity of these exhibits . . . ."[5] This misses the point entirely. The documents could be "authentic" in the colloquial sense that they are genuine documents, yet still be legally "unauthenticated" because they did not comply with the evidence rules regarding authentication of documents. Harris's general arguments related to "the remainder of the exhibits"

---

[4]Presumably Harris is referring to Exhibits 1, 2, 3, 4, 5, 17, 18, 19, 20, 23, 24, and 25, although we do not know for sure because he uses general language and does not refer to any specific exhibits.

[5]The City notes that this statement is incorrect. The district court analyzed the authenticity of these exhibits because the City objected to them.

do not cite to the record or in any way show that the district court erred or that any such error was more than harmless error. Again, such perfunctory arguments are deemed waived. *Geboy v. Brigano*, 489 F.3d 752, 767 (6th Cir. 2007), and *Dillery v. City of Sandusky*, 398 F.3d at 569. We affirm the district court's exclusion of these exhibits.

B.

On appeal, Harris first argues that the annexation is invalid because his signature on the annexation petition was forged. The district court found, and the City concedes, that there was a genuine issue of fact regarding whether Harris signed the annexation petition, or whether his signature was forged.[6] However, the district court ruled that this factual dispute was not material. We agree.

Harris argues that the district court erred by holding that he presented no evidence that the City knew about the forgery and that the annexation was valid, despite the forgery. Plaintiff asserts that he "presented" evidence in two categories. He claims to have presented evidence showing that his signature was forged, and evidence showing that defendants knew that his signature was forged. None of the "evidence" he refers to was admissible. To show that his signature was forged, he refers the court to Exhibits 27, 28, and 29—all of which were stricken by the district court as being

---

[6]The City agrees that there is a genuine issue of fact on this point because Harris claimed in his deposition that the signature was forged, whereas Jack Kigerl claimed that Harris signed the annexation petition in his presence. The City *does not* concede that the signature was forged.

inadmissible.[7] Because these exhibits were inadmissible, for the reasons explained herein, Harris

has not provided any evidence suggesting that defendants knew his signature was a forgery. As

noted by the district court, while Harris asserts in his own deposition that his signature was forged,

his belief that an agent of the defendants committed the forgery was merely a "suspicion."

Harris also appeals the district court's conclusion that the forgery was immaterial, arguing

that "even if the City did not know about the forgery, the annexation should still be overturned."

Harris then dedicates the rest of his argument to circuitously assert that a forged instrument is void.

The district court took the more logical approach, asking whether the issue of fact regarding

the forgery is outcome determinative—thus defeating summary judgment—or if there is some other

reason why Harris's claim could not survive as a matter of law, regardless of the forgery. In granting

the motion for summary judgment, the district court rejected the argument that one void signature

invalidates the entire annexation petition. We agree.

To arrive at this conclusion, the district court correctly applied and analyzed Chapter 709 of

the Ohio Revised Code—the chapter governing the annexation process. According to the version

of Chapter 709 that was in effect at the time, the owners of property contiguous to a municipality

---

[7]In fairness, Harris did mention two exhibits that were admitted. He lists Exhibit 43, a copy
of the petition for annexation, and Exhibit 30, Kigerl's deposition. While both of these exhibits were
in the record, neither support the argument that his signature was forged. There is nothing on the
face of the petition for annexation to suggest that his signature is a forgery. Even worse for Harris's
argument, Kigerl's deposition states that Harris signed the petition in Kigerl's presence—Harris
apparently offers it to impeach Kigerl's credibility, noting that Kigerl had difficulty identifying
Harris until Harris entered the deposition room. Such credibility determinations are inappropriate
at the summary judgment stage.

may submit a petition for annexation to the board of county commissioners. OHIO REV. CODE §§ 709.02(A)-(B). The petition must contain the "signatures of a majority of the owners of real estate in the territory proposed for annexation." *Id*. at § 709.02(C)(1). The petition must also possess other technical requirements not at issue here. *See generally*, Chapter 709, OHIO REV. CODE. The board of county commissioners must set a hearing and the petitioners' agent must send notice of the hearing to the municipality, the property owners subject to the petition, and the property owners adjacent to the property subject to the petition. OHIO REV. CODE §§ 709.023(B)-(C).

The board of county commissioners must conduct a public hearing, and any owner whose signature is on the petition may appear to testify that the signature was obtained through fraud, duress, or misrepresentation.[8] If the board finds that the signatures on the petition constitute a majority of the owners of the territory subject to the petition, and that the petition has met other requirements not at issue here, then the board may grant the petition. Following approval of the petition, the municipality must accept or reject the petition. *See* OHIO REV. CODE §§ 709.04, 709.05, and 709.06.

The district court held that "[i]t is evident from the statutory framework that [Harris's] contention that one arguably forged signature nullifies the entire petition for annexation lacks merit."

---

[8]Harris argues that the affidavit of William Rice, Exhibit 31, demonstrates that his signature was obtained through fraudulent means. There are two problems with this argument: (1) Exhibit 31 was struck as being inadmissible, and thus cannot be the basis of the court's decision; and (2) the statute clearly delegates the responsibility of determining the validity of the signatures to the board of commissioners. If Rice's signature was obtained fraudulently, that information should have been presented to the board.

The district court noted that the statute requires the board of commissioners to strike any invalid signatures from the petition; it does not require the board to invalidate the entire petition. The district court's analysis of this issue is based on the plain language of the statute and is correct. We therefore affirm the district court's grant of summary judgment in favor of defendants regarding the validity of the annexation.

C.

Harris argues that the annexation of his property violated both his substantive and procedural due process rights. Specifically, he argues that (1) the annexation of the Interstate Property violated his procedural due process rights, (2) the zoning of the Interstate Property violated his procedural due process rights, and (3) the zoning of his Interstate Property violated his substantive due process rights.

Plaintiff notes that OHIO REV. CODE § 709.03 allows a property owner who signed an annexation petition to withdraw the signature, subject to certain conditions.[9] Harris argues that he was deprived of his opportunity to withdraw his signature because of the forgery. This argument fails for the same reason the forgery argument failed. There were three signatures on the petition for annexation; even if Harris withdrew his name, the petition would still have had enough valid signatures to annex the property.

---

[9]He also notes that the forgery violated his procedural due process rights. Having already addressed this issue, there is no need to deal with it here.

Harris recycles his forgery argument again to contend that his procedural due process rights were violated. It fails here for the same reason it has failed every other time he has raised it. Harris argues that the City had no right to zone his property because the City obtained it due to a forged petition. The only argument he adds to this tired soliloquy is an undeveloped suggestion that the City had no rational basis for its zoning decisions. Given the difficulty of overturning a governmental action on rational basis review, Harris needs to actually articulate an argument rather than merely alluding to a possible error. *See Geboy v. Brigano*, 489 F.3d at 767, and *Dillery*, 398 F.3d at 569 (arguments addressed in a perfunctory manner are deemed waived). We affirm the district court's grant of summary judgment in favor of defendants on this issue.

D.

Harris argues that the annexation amounted to an unlawful physical taking of his property because it was based on a forged petition. We reject this argument for the same reason we dismissed Harris's other arguments based on forgery. For the reasons detailed above, the petition for annexation was proper with or without Harris's signature, and a properly executed annexation gives the property owner all of the process to which he is due under the Fifth and Fourteenth Amendments.[10]

Harris also claims that the zoning of the Terrace Property constituted a regulatory taking. The Fifth Amendment's Takings Clause prohibits both physical takings and regulatory takings made

---

[10]Harris again tries to make an argument out of exhibits that were stricken from the record. Specifically, he cites Exhibits 1, 2, 3, 4, 5, 9, 10, 13, 15, 16, 17, 18, 19, 23, and 24 as evidence to support his takings argument—the district court struck each of these exhibits.

without the payment of just compensation.[11]  *Waste Mgmt., Inc. v. Metro. Gov't of Nashville*, 130 F.3d 731, 737 (6th Cir. 1997).  There are two types of regulatory takings.  A "categorical" or "complete taking" occurs when a regulation leaves a property owner with "*no* productive or economically beneficial use of land," and it entitles the property owner to just compensation under the Fifth Amendment.  *Lucas v. South Carolina Coastal Council*, 505 U.S. 1003, 1017 (1992).  A second category of regulatory takings, referred to as a "partial" or a "non-categorical" taking, prevents the property owner from some—but not all—economic uses of the land.  Such an action may still require compensation depending on the level of governmental intrusion.  *See Anderson v. Charter Twp. of Ypsilanti*, 266 F.3d 487, 493 (6th Cir. 2001).

Harris claims that the zoning "caused offers to purchase the property for $825,000 and approximately one million dollars to be withdrawn, with one of these offers being reduced to an offer to purchase the property for $300,000."  We have held that a zoning ordinance merely has to bear a rational relationship to legitimate state land use concerns.  *Pearson v. City of Grand Blanc*, 961 F.2d 1211, 1223 (6th Cir. 1992).  In *Pearson*, we held that our role was very narrow, noting that "federal court review of a zoning ordinance may only determine whether it is clearly arbitrary and unreasonable, in the very restricted sense that it has 'no substantial relation to the public health, safety, morals or general welfare.'" *Id*. (quoting *City of Eastlake v. Forest City Enter.*, 426 U.S. 668, 676 (1976)); *see also Village of Euclid v. Ambler Realty Co.*, 272 U.S. 365, 395 (1926).

---

[11]The Takings Clause is part of the Fifth Amendment, but it was applied to the states through the Fourteenth Amendment. *Lingle v. Chevron USA, Inc.*, 544 U.S. 528, 537 (2005) (citing *Chicago, B. & Q.R. Co. v. Chicago*, 166 U.S. 226 (1897)).

Harris testified that he attended the zoning meeting and voiced his concerns. Under the circumstances, the district court found that the properly enacted zoning regulation did not deprive Harris of a constitutional right. Harris's brief admits that "he could not show that this evidence intrinsically or necessarily required a finding of a taking," but argues that the district court should have allowed him "to prove a taking by showing that the facts as a whole weighed in favor of finding the City's action to be a taking." Harris misunderstands Rule 56—he was not required to "prove a taking" at this phase; he was merely required to raise a genuine issue of material fact. Because he has failed to do so, we affirm the district court's grant of summary judgment in favor of defendants regarding Harris's claim of a regulatory taking.

E.

As an additional reason for its decision to grant summary judgment in favor of defendants regarding Harris's takings claim, the district court ruled that Harris had not exhausted his remedies. The Supreme Court has held that when a state provides an adequate procedure for a property owner to seek just compensation for a taking, the property owner is required to follow that procedure. *Williamson County Reg'l Planning Comm'n v. Hamilton Bank*, 473 U.S. 172, 194-95 (1985). We have previously noted that "Ohio law provides a statutory mechanism by which the government actor seeking to take property is under a duty to bring an appropriation proceeding against the landowner. A property owner who believes that his property has been taken in the absence of such an appropriation proceeding may initiate a mandamus action in Ohio court to force the government actor into the correct appropriation proceeding." *Coles v. Granville*, 448 F.3d 853, 861 (6th Cir.

2006) (citations and footnote omitted). It is undisputed that Harris did not bring an action in state court demanding just compensation for the annexation or for the zoning.

The district court correctly described the requirements of Ohio law and analyzed its effects on Harris's case. However, on appeal, Harris argues that the district court misunderstood his argument. Regarding the annexed property, Harris argues that the remedy he sought "was not compensation, but to have his property de-annexed." Regarding the zoning issue, he argues that he "was challenging the zoning first and foremost on the basis that the City had no power to zone his property because the annexation was invalid."

We interpret these concessions by Harris as an abandonment of his earlier position. His brief expressly argues that he is not seeking compensation but is challenging the legitimacy of the annexation and the zoning actions. The legitimacy of the annexation and zoning have already been discussed above, and for the reasons stated in those sections of this opinion, we affirm the decision of the district court.

III.

Harris appeals the district court's grant of summary judgment in favor of defendants Robert Vincenzo, Thomas Murphy, Dennis Bigler, Shelley Fortney, and Al Davies (collectively "Officials"). Vincenzo was the mayor of St. Clairsville, Bigler was the Director of Public Services, Murphy was the Zoning Administrator, Fortney was the Utilities Manager, and Davies was the Law Director. Harris alleges that the Officials, as a group, "engaged in a scheme for the purpose of forcing [Harris]

to part with a portion of [Harris's] Interstate Property." The district court described Harris's two-pronged theory regarding the Official's scheme against him:

> First, [Harris] alleges that defendants generated false and overstated water and electric bills for utility services at the Terrace Property. [Harris] argues that defendants then enforced these inaccurate bills by improperly placing liens on the Terrace Property and directly interfering with the relationships between [Harris] and the tenants of the Terrace Property. Second, [Harris] alleges that defendants caused the wrongful annexation of [Harris's] Interstate Property.

Harris sought compensatory and punitive damages and a court order "de-annexing" his Interstate Property. His claim against the Officials relied upon the following theories: tortious interference with contract, illegal and improper annexation under Ohio Law, a taking in violation of the Fifth and Fourteenth Amendments, civil conspiracy, and 42 U.S.C. § 1983. The district court granted summary judgment to the Officials on all counts.

Harris raises three issues on appeal. First, he argues that the district court erred by ruling that his civil conspiracy claims were barred by the intra-corporate doctrine. Second, he argues that the district court erred by ruling that his claims of tortious interference lacked evidentiary support. Finally, he argues that the district court erred by finding that his claims for wrongful annexation, takings, and violations of due process failed "for a variety of reasons."

A.

The district court correctly noted that there are three elements to a civil conspiracy claim under Ohio law. In order to prevail, a plaintiff must show that: "(1) the defendants shared a common understanding or design to commit an unlawful act; (2) the alleged co-conspirator shared in the general conspiratorial objective; and (3) an act was committed in furtherance of the conspiracy

that caused injury to the complainant." *Aetna Cas. & Surety Co. v. Leahey Constr. Co.*, 22 F. Supp. 2d 695, 702 (N.D. Ohio 1998).

The district court ruled that Harris's claim was barred by the "intra-corporate conspiracy" doctrine. The Sixth Circuit has expressly adopted this doctrine, describing it as the notion that "a corporation cannot conspire with its own agents or employees." *Hull v. Cuyahoga Valley Joint Vocational Sch. Dist. Bd. of Educ.*, 926 F.2d 505, 509 (6th Cir. 1991). The district court applied this doctrine, ruling that "[t]here can be no conspiracy between a municipality and its own agents or employees," and granted the Officials' motion for summary judgment.

Harris dedicates a mere four sentences to his argument that the district court erred in applying the intra-corporate conspiracy doctrine. His only substantive argument is that the district court erred "because it failed to consider that Kigerl was an alleged conspirator. Kigerl, a private attorney, was neither an officer, agent, or employee of the City." Assuming, without deciding, that the district court erred in applying the bar of the intra-corporate conspiracy doctrine, we hold that for the reasons stated herein, plaintiff failed to establish a genuine issue of material fact by admissible evidence in support of this claim.

### B.

Harris argues that the Officials tortiously interfered with his business relationships by (1) generating fraudulent water, sewer, and electric bills for the Terrace Property, (2) generating fraudulent liens for unpaid utility bills on the Terrace Property, (3) refusing to maintain City-owned utility poles on the Terrace Property, and (4) pressuring Harris to sell the Interstate Property.

There are five elements to a claim for tortious interference with a business relationship under Ohio law. A plaintiff must show: (1) the existence of a contract and/or business relationship; (2) the tortfeasor's knowledge thereof; (3) the tortfeasor's intentional interference causing a breach or termination of the relationship; (4) lack of justification; and (5) damages. *Fred Siegal Co., L.P.A. v. Arter & Hadden*, 707 N.E.2d 853, 858 (Ohio 1999).

The district court granted summary judgment for the Officials, finding that "there is no genuine issue of material fact that suggests that Officials tortiously interfered with Plaintiff's contractual rights or business relations with the tenants and/or prospective purchasers at either the Terrace Property or the Interstate Property." Specifically, the district court held that:

> the affidavits of Officials state that none of them were ever involved or had knowledge of any conspiracy or effort to: (1) generate fraudulent water, sewer, or electric bills for the Terrace Property; (2) generate or file fraudulent liens for unpaid utility bills on [Harris's] Terrace Property; (3) refuse to maintain city-owned electric utility poles at [Harris's] Terrace Property; or (4) pressure [Harris] to sell his Interstate Property. Except for mere, unsupported allegations and generalized suppositions, [Harris] offers no evidence to rebut the affidavits.

Harris argues that he established a genuine issue of material fact, but that the district court refused to accept the evidence. To support his claim, Harris relies on excerpts from Exhibits 1, 2, 3, 4, 5, 7, 8, 9, 10, 12, 13, 15, 16, 17, 18, 19, 20, 23, and 24—all of which were ruled inadmissible by the district court, and thus they were not properly within the record. Harris has not identified any *admissible* exhibit that would allow reasonable minds to conclude that the Officials tortiously interfered with his business relationships. *See* FED. R. CIV. P. 56.

C.

Harris argues that the City is liable for wrongful annexation, takings, and deprivation of due process for the same reason that the Officials are liable for these actions. Therefore, we affirm the district court's grant of summary judgment in favor of the Officials for the same reasons that we affirmed summary judgment in favor of the City.

IV.

Harris named attorney Jack Kigerl as a defendant. Kigerl claims that he was Harris's lawyer "for the very narrow purpose of drafting the petition for annexation of real property that is involved in this case." Harris denies this, arguing that he "never formed or intended to form any attorney/client relationship."

Plaintiff did not file a separate complaint against Kigerl, and it is difficult to determine exactly which counts of his complaint apply to Kigerl. This caused the district court to analyze Kigerl's potential liability for each of the counts.[12] The district court interpreted Harris's arguments as being that Kigerl: (1) conspired to cause Harris's forged signature to be placed on the annexation petition and upon a power of attorney form; (2) knew that Harris's signature had been forged; and (3) testified falsely that Harris signed the annexation petition in Kigerl's presence. However, on appeal, Harris makes just two arguments: (1) the district court erred by ruling that Kigerl could not be held liable for civil conspiracy because there was no evidence that he was aware of the forgery,

---

[12]Kigerl complicated this matter by not specifying which counts of the complaint he challenged in his motion for summary judgment, forcing the district court to analyze all of them.

and (2) the district court erred by ruling that Harris's negligence claim must fail because there was no attorney-client relationship, and, even if there was, the statute of limitations had expired.

Harris's argument regarding Kigerl's knowledge of the alleged forgery is based upon exhibits that were excluded from the record. Specifically, Harris relies upon Exhibits 27, 28, 29, 36, and 39. For reasons described herein, these exhibits are not "evidence" and are not sufficient to defeat a motion for summary judgment. Because Harris's argument is not based upon admissible evidence, there is no genuine issue of material fact on this point and his argument fails.

Plaintiff's negligence claim against Kigerl can only be described as bizarre. Harris insists that there was no attorney-client relationship between himself and Kigerl. The district court noted that this matter was in dispute, but was not dispositive. It accepted Kigerl's argument that the only remedy available against an attorney for negligence is a legal malpractice claim. However, an attorney-client relationship must exist in order to succeed in a legal malpractice claim. *Vahila v. Hall*, 674 N.E.2d 1164, 1167 (Ohio 1997).

This leaves one of two possibilities. Either Harris is right, and there was no attorney-client relationship, in which case Harris cannot succeed in a negligence action against Kigerl, or Kigerl was right, in which case the district court needs to analyze the merits of the negligence claim. To be thorough, the district court analyzed the negligence claim and found that it was barred by the statute of limitations. The district court then found that it did not matter whether an attorney-client relationship existed, because the negligence claim failed either way. We agree.

V.

For the reasons stated above, we affirm the district court's grant of summary judgment in favor of defendants.