# United States Court of Appeals
## FOR THE DISTRICT OF COLUMBIA CIRCUIT

Argued September 9, 2014                    May 5, 2015

No. 13-3071

UNITED STATES OF AMERICA,
APPELLEE

v.

CHARLES IKE EMOR, ALSO KNOWN AS CHARLES IKE
EMENOGHA, ALSO KNOWN AS CHARLES IKESON,
APPELLEE

SUNRISE ACADEMY,
APPELLANT

Appeal from the United States District Court
for the District of Columbia
(No. 1:10-cr-00298-1)

*John D. Quinn* argued the cause for appellant. With him on the briefs were *Stephen Sale* and *David B. Smith*.

*Zia M. Faruqui*, Assistant U.S. Attorney, argued the cause for appellee. With him on the brief were *Ronald C. Machen Jr.*, U.S. Attorney, and *Elizabeth Trosman*, *John P. Mannarino*, and *Diane G. Lucas*, Assistant U.S. Attorneys. *Elizabeth H. Danello*, Assistant U.S. Attorney, entered an appearance.

Before: BROWN, MILLETT and WILKINS, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* BROWN. Concurring opinion filed by *Circuit Judge* WILKINS.

BROWN, *Circuit Judge.* In an episode of the iconic 1990s television show *Friends*, Joey Tribbiani tries to dissuade Rachel Green from moving to Paris. Joey asks Rachel to flip a coin. If he wins the coin flip, she must agree to stay. Rachel flips the coin; Joey loses. When later recounting the story to Ross Gellar, a befuddled Joey says, "[w]ho loses fifty-seven coin tosses in a row?" *Friends*: *The One with Rachel's Going Away Party* (NBC television broadcast Apr. 29, 2004). Before Ross can answer, Joey explains Rachel's rules: "Heads, she wins; tails, I lose." *Id*.

The proceedings in this case have largely followed the same rules. SunRise Academy ("SunRise") claimed the federal government seized property from criminal defendant Charles Emor belonging to SunRise. But the government succeeded in excluding SunRise from Emor's criminal proceedings, suggesting SunRise could press its claims to the property in a third-party forfeiture proceeding. When SunRise later did so, the government filed a motion to dismiss the petition, contending that SunRise should be denied a hearing based on findings the court made in the prior proceeding from which SunRise was excluded. Because this heads the government wins and tails SunRise loses form of criminal forfeiture does not comport with the statutory scheme, we reverse.

3

I

A

SunRise was founded in 1999 by Charles Emor as a private nonprofit school serving special needs children in the District of Columbia. SunRise was governed by a Board of Directors, which, at various times, consisted of SunRise's principal, teachers, employees, and Emor's family members. Emor was the one constant on SunRise's Board.

SunRise was no small operation. It built a solid financial endowment, possessed two campuses, educated over 150 students each semester, and employed a number of teachers, therapists, and counselors. In July 2007, SunRise filed a successful application for a Certificate of Approval with the District of Columbia to provide educational services to special needs students. Students paid no tuition to attend SunRise; instead, the District reimbursed SunRise for educating the students. That reimbursement often totaled over $400,000 a month.

In April 2009, the District of Columbia Public Schools ("DCPS") decided to investigate whether SunRise had fully implemented DCPS's policies. More than a year later, the Office of State Superintendent of Education ("OSSE") issued a report and revoked SunRise's Certificate, after finding SunRise had failed to keep accurate daily attendance records, fully report absenteeism, and had fabricated student records to receive payment from the District for services not actually rendered. But OSSE did not revoke SunRise's Certificate due to the quality of education provided by SunRise.

4

B

Meanwhile, from January 2006 through November 2010, Emor used his authority as a SunRise Director and Board Member to withdraw funds from SunRise's bank accounts. He then used those funds to, *inter alia*, purchase luxury items for himself, provide money to his family members, and pay the rent on his townhouse.

Emor's most brazen fraud involved convincing SunRise's Board to invest in a for-profit company called Core Ventures. According to the proposal, Core would build a coffee shop or vocational school on SunRise property. The business would provide training for SunRise students and profits would be returned to SunRise.

Beginning in March 2009, Jamila Negatu, a SunRise Board Member and employee, made a series of wire transfers totaling over two million dollars to Core. Emor directed Negatu to transfer the money, even though SunRise possessed no loan documentation binding Core to repay the money, reinvest the profits, or explaining the consequence of default. The only documentation regarding the money transfers were minutes from two SunRise Board meetings and financial documents prepared for SunRise by its accountant characterizing the transfers as loans.

The money wired to Core was never returned to SunRise. Nor did Core pursue its plans for building a coffee shop or a vocational school. Core, however, did purchase and pay the insurance on a Lexus SUV that Emor drove.

## C

The federal government eventually caught Emor, arresting him, and seizing the Lexus SUV and the over two million dollars in Core's bank account. The government charged Emor with thirty-seven counts, including mail and wire fraud, and various other federal and D.C. Code violations. The government also provided notice it was seeking forfeiture of Core's property.

The government had trouble identifying the alleged victim of Emor's fraud. In some counts, the government alleged Emor, through SunRise, devised a scheme to defraud and to obtain public money from the District, for his own use and benefit. Consistent with a scheme to defraud the District, the government charged Emor with ten counts of mail fraud and five counts of wire fraud, with each count involving the District reimbursing SunRise for educational services. The district court ultimately dismissed these counts of the indictment with prejudice over the government's objections.

But the government also described Emor's scheme as one to defraud SunRise, alleging Emor created a set of bogus SunRise Board of Director resolutions purportedly authorizing SunRise to lend over two million dollars to Core for the purposes of operating a coffee shop, when the "terms of the loan w[ere] never reduced to writing." J.A. 50. And the government charged Emor with several wire fraud counts involving each wire transfer from SunRise to Core.

SunRise was never charged with wrongdoing by the government. In fact, SunRise filed a motion under Federal Rule of Criminal Procedure 41 for the return of its property, claiming that it owned the two million dollars and the Lexus. The district court denied that request, holding that 21 U.S.C.

§ 853(k) prohibits third parties from intervening in criminal proceedings, other than a third party proceeding under 21 U.S.C. § 853(n). *Sunrise Acad. v. United States*, 791 F. Supp. 2d 200, 204 (D.D.C. 2011).

Emor ultimately negotiated a sweetheart deal with the government, which agreed to drop every count save one in exchange for Emor's guilty plea. The Statement of the Offense, included as part of Emor's plea agreement to one count of wire fraud, alleged that Emor devised a scheme to obtain money "from SunRise's bank accounts." J.A. 71. As a part of the scheme, Emor committed "various misrepresentations and omissions of material facts," and "used the money obtained from SunRise's bank accounts in a manner unrelated to the education of students with disabilities at SunRise." *Id.* But the prosecutors consciously and deliberately declined to identify the victim of Emor's fraud, and the district court deferred a determination of the fraud victim's identity until the preliminary forfeiture hearing.

D

SunRise could not participate at the preliminary forfeiture hearing, although two board members and several employees were called to testify as part of the government's case. The court made a number of findings at the hearing, of which three are relevant to this appeal. First, the court found SunRise did not own Core. Second, the court held SunRise was Emor's alter ego. Third, the court found, for restitution purposes, that SunRise was not a victim of Emor's fraud. The court entered a preliminary order forfeiting the funds in Core's bank accounts and the Lexus SUV to the federal government.

SunRise then filed a third-party petition claiming ownership in the forfeited property and requesting a hearing to determine its interest. SunRise claimed it was a secured lender to Core; the owner of the forfeited property; the assignee of all interest in the forfeited property from Core; the beneficiary of a constructive trust; and the victim of Emor's fraud.

The government moved to dismiss SunRise's petition for lack of standing, and the district court granted the motion. *United States v. Emor¸* 2013 WL 3005366 (D.D.C. June 18, 2013). The court found SunRise had failed to assert facts showing it possessed a secured interest in the seized funds. Moreover, SunRise's bare assertion it owned Core was insufficient in light of the court's previous finding at the preliminary forfeiture hearing that Emor, alone, owned Core.

The court also rejected SunRise's claim of assignment from Core. The court found Core was Emor's nominee (hence Core and Emor were the same), and only someone "other than" the defendant could petition for a third-party proceeding. J.A. 313. Based on a finding it made during the preliminary forfeiture hearing, the court held SunRise lacked standing because it was an alter ego of Emor—a finding it found "no reason to revisit." J.A. 323. The court further declined SunRise's constructive trust argument, noting that this Court does not allow the constructive trust theory of standing in forfeiture cases. *See United States v. BCCI Holdings (Luxemborg), S.A.*, 46 F.3d 1185 (D.C. Cir. 1995). Lastly, the court concluded SunRise was not entitled to the forfeited funds as a victim of fraud because merely being a fraud victim does not confer an interest in property necessary to meet the standing requirements.

8

II

SunRise claims it possessed the standing necessary to obtain a third-party ancillary hearing under several legal theories. Before addressing those theories, a discussion of criminal forfeiture procedures is necessary.

A

Under 28 U.S.C. § 2461(c), "criminal forfeiture is available for general . . . wire fraud violations." *United States v. Day*, 524 F.3d 1361, 1376 (D.C. Cir. 2008). The procedures set forth in 21 U.S.C. § 853—minus subsection (d)—apply "to all stages of a criminal forfeiture proceeding." 28 U.S.C. 2461(c).

At the preliminary order of forfeiture stage, "[i]f the government seeks forfeiture of specific property, the court must determine whether the government has established the requisite nexus between the property and the offense." FED. R. CRIM. P. 32.2(b)(1)(A). The court is required to make its determination "without regard to any third party's interest in the property." FED. R. CRIM. P. 32.2(b)(2)(A). Indeed, no third party may "intervene" in the criminal forfeiture proceeding. 21 U.S.C. § 853(k)(1).

The sole forum for a third party to address its interest in forfeited property is through a third party ancillary proceeding. *See id.* § 853(n). Any third party, "other than the defendant," may petition for an ancillary proceeding if it can assert a "legal interest" in the forfeited property. *Id.* § 853(n)(2). The third party must file a petition setting forth the "nature and extent" of its interest in the property, the "time and circumstances" when petitioner acquired that interest, any supporting facts, and the requested relief. *Id.* § 853(n)(3).

After receiving a petition, a court may, upon motion, "dismiss the petition for lack of standing" or for "failure to state a claim." FED. R. CRIM. P. 32.2(c)(1)(A). For purposes of deciding any motion to dismiss, "the facts set forth in the petition are assumed to be true." *Id.*

In an appeal from a criminal forfeiture proceeding, we review the district court's fact finding for clear error, *see United States v. Oregon*, 671 F.3d 484, 490 (4th Cir. 2012), and the district court's legal interpretations de novo, *see Day*, 524 F.3d at 1367.

B

As a threshold matter, we must determine whether SunRise has standing under Article III of the Constitution. *See Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559–60 (1992). "[T]he requirements for a [petitioner] to demonstrate constitutional standing [to challenge a forfeiture] are very forgiving." *United States v. One-Sixth Share of James J. Bulger in All Present And Future Proceeds of Mass Millions Lottery Ticket No. M246233*, 326 F.3d 36, 41 (1st Cir. 2003). While some courts have focused on whether a party had an ownership or possessory interest under state law at the time of forfeiture, *see, e.g.*, *United States v. Timley*, 507, F.3d 1125, 1129 (8th Cir. 2007), other courts have noted "it is the injury to the party seeking standing that remains the ultimate focus," *United States v. Cambio Exacto, S.A.*, 166 F.3d 522, 527 (2d Cir. 1999). In general, any colorable claim on the property suffices, if the claim of injury is "redressable, at least in part, by a return of the property." *United States v. 7725 Unity Ave. N.*, 294 F.3d 954, 957 (8th Cir. 2002).

SunRise claims ownership over the money it transferred to Core's accounts in response to Emor's fraudulent statements. SunRise further claims that had the government not seized the property and obtained a preliminary order of forfeiture, SunRise would have obtained its property back, either as the prior owner and crime victim with a superior interest or under Core's assignment of rights. If SunRise could have obtained the property back from Core, SunRise continues to suffer injury because of the forfeiture order. *See Oregon*, 671 F.3d at 491 (declining to adopt government's argument that "a petitioner with less than legal title challenging the forfeiture . . . could never have standing, even if its interest is greater than that forfeited by the defendant to the United States"); *United States v. Campos*, 859 F.2d 1233, 1237–38 (6th Cir. 1988) (noting the criminal forfeiture statute "goes beyond giving only a party with a secured interest an opportunity to be heard"). Thus, because the seizure of property without due process is the quintessential injury, it is sufficient, for constitutional purposes, that SunRise alleged its property was taken by the government through forfeiture; it would have reacquired its property had the property not been forfeited to the government; it was excluded from the forfeiture proceedings; and its injury is redressable through an amendment of the forfeiture order. *See Lujan*, 504 U.S. at 560–61 (requiring injury, causation, and redressability in order to establish constitutional standing).

## C

We next turn to statutory standing. Under 21 U.S.C. § 853(n)(2), any third party, "other than the defendant," may petition for an ancillary proceeding. The district court held that SunRise was Emor's alter ego; and hence, SunRise lacked standing because it was not someone "other than the defendant." SunRise claims the court was wrong to dismiss its

petition based on an alter ego finding the court made at a hearing in which it was not allowed to participate. We agree.

To begin with, the Supreme Court has said that the term "statutory standing" is a bit "misleading." *Lexmark Int'l, Inc. v. Static Control Components, Inc*., 134 S. Ct. 1377, 1387 n.4 (2014). Statutory standing is not really about standing at all, in the sense that it limits a "court's statutory or constitutional *power* to adjudicate the case." *Id*. (emphasis in original). Instead, statutory standing is nothing more than an inquiry into whether the statute at issue conferred a "cause of action" encompassing "a particular plaintiff's claim." *Id*. at 1387; *see also Natural Res. Def. Council v. EPA*, 755 F.3d 1010, 1018 (D.C. Cir. 2014). In other words, statutory standing "is itself a merits issue." *Oregon*, 671 F.3d at 490 n.6.

The focus on whether SunRise pled a valid cause of action substantially changes the inquiry. A district court deciding a motion to dismiss on jurisdictional grounds, such as standing, may consider evidence outside the complaint. *See Coal. for Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (citing FED. R. CIV. P. 12(b)(1)). But when a court decides whether a petitioner stated a valid claim for relief, a court must treat the complaint's factual allegations as true and may not use factual findings and legal conclusions drawn from outside the pleadings. *See Holy Land Found. for Relief & Dev. v. Ashcroft*, 333 F.3d 156, 165 (D.C. Cir. 2003) (citing FED. R. CIV. P. 12(b)(6)). The Federal Rules of Criminal Procedure have largely adopted this pleadings-only rule for third-party ancillary proceedings. *See* FED. R. CRIM. P. 32.2(c)(1)(A) (in deciding a motion to dismiss a third-party

criminal forfeiture petition, "the facts set forth in the petition are assumed to be true").[1]

By requiring courts to stick to the pleadings when determining whether a petitioner has failed to state a valid claim for relief, the pleadings-only rule fortifies the due process concerns associated with stripping third parties of property rights based on proceedings in which they had no prior opportunity to participate. *See Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 n.7 (1979) ("It is a violation of due process for a judgment to be binding on a litigant who was not a party or a privy and therefore has never had an opportunity to be heard."); *United States v. Reckmeyer*, 836 F.2d 200, 208 (4th Cir. 1987) ("Congress intended, through . . . [the criminal forfeiture statutes], to provide a means by which third persons who raise challenges to the validity of the forfeiture order could have their claims adjudicated."). Thus, to the extent the district court relied on an alter ego finding drawn from outside the petition and made during a proceeding in which SunRise could not represent its own interests, the court erred.

As to the government's claim that SunRise failed to plead sufficient facts rebutting the district court's alter ego finding, we disagree. The statutory text requires a third party to plead only a "legal interest" in the forfeited property, and then set forth the "nature and extent" of its interest in the property, the "time and circumstances" when petitioner acquired that interest, any supporting facts, and the requested relief. 21 U.S.C. § 853(n)(2), (n)(3). There is no textual anchor forcing third parties to allege facts rebutting a court's findings made

---

[1] The criminal forfeiture statute prescribes when a court can consider "relevant portions of the record of the [underlying] criminal case" in deciding whether to amend a preliminary forfeiture order, and that is "[a]t the hearing." 21 U.S.C. § 853(n)(5).

at a proceeding in which the third party did not participate. And even assuming that SunRise was required to plead it was someone "other than the defendant," 21 U.S.C. § 853(n)(2), it did so. In its petition, SunRise stated that Emor never had an "ownership interest" in SunRise. J.A. 287.

## III

SunRise must state a valid claim of relief in order to obtain a hearing. SunRise stated such a claim when it alleged, "the Forfeited Property at all times remained the property of SunRise Academy." J.A. 285.

## A

A third-party petitioner seeking relief from a preliminary order of criminal forfeiture must satisfy one of two conditions. A petitioner must either show a legal interest in the forfeitable property vested in petitioner rather than the defendant or show its interest was superior to the criminal defendant's at "the time of the commission of the acts which gave rise to the forfeiture." 21 U.S.C. § 853(n)(6)(A). If the petitioner's interest arose after the crime, the petitioner must show it was a "bona fide purchaser for value" of the property, who was "reasonably without cause to believe that the property was subject to forfeiture" at the time of purchase. *Id.* § 853(n)(6)(B). The vesting and superior interest clause is most relevant here.

In its petition, SunRise alleged an embezzlement theory, claiming the "Forfeited Property at all times remained the property of SunRise Academy," J.A. 285, and that "Mr. Emor's embezzlement from SunRise occurred at the time of each transfer from SunRise to Core," J.A. 289. In its opposition to the government's motion to dismiss, SunRise

again referred to Emor's "embezzle[ment]" of the $2 million dollars and claimed SunRise owned the funds transferred to Core at the time of "the alleged *illegal taking* by Mr. Emor . . . ." Petitioner SunRise Academy's Memorandum of Points and Authorities in Opposition to Government's Motion to Dismiss at 3, 15-16, United States v. Emor, No. 10-CR-298-PLF (D.D.C. Oct. 10, 2012), ECF No. 122 (emphasis added). Although the embezzlement theory was not well developed, SunRise did enough to preserve the claim for our review.

SunRise claimed Emor stole the funds. Under District of Columbia law, theft covers not merely larceny, but "larceny by trick, larceny by trust, *embezzlement*, and false pretenses." D.C. CODE § 22-3211(a) (emphasis added). So if SunRise proves Emor stole or embezzled the funds SunRise sent to Core for the purposes of building a coffee shop, SunRise could establish possession of legal title or a superior legal interest at "the time of the commission of the acts which gave rise to the forfeiture." 21 U.S.C. § 853(n)(6)(A). That is so because, under District of Columbia law, embezzlement is a form of theft in which the defendant deprives the victim of the possession of, but not title to, property. *See Great Am. Indem. Co. v. Yoder*, 131 A.2d 401, 403 (D.C. 1957) (where one transfers possession of property to another who converts it to his own use, the taking is a larceny); *see also* GEORGE G. BOGERT, ET AL., BOGERT'S TRUSTS AND TRUSTEES § 476 (Thomsen-Reuters rev. 3d ed. 2015) ("A thief or an embezzler has no title to the stolen property and thus, if the stolen property is found still in his or her hands, the property may be recovered by the rightful possessor.").

Congress designed criminal forfeiture to punish criminal defendants, not crime victims, and clearly did not contemplate section 853(c) being used to defeat a victim's property interest. To put it another way, the vesting statute targets the

perpetrator's interests downstream from the crime, not the upstream interests of the victim. Thus, whether a third party petitioner can claim continuous title or superior interest should make little practical difference in circumstances such as these. An example helps to illustrate how seemingly disparate characterizations ought to lead to congruent results. Say an employee convinced the Metropolitan Museum of Art to take part in an art transfer with another museum. But instead of shipping the painting to the other museum, the employee ships it to his home for his personal use, committing mail fraud in the process. If the act is labeled a fraud, the Museum's vested interest prior to the fraud should mean it retains a superior interest sufficient to defeat forfeiture. Arguably, though, a fraud victim could be relegated to the ranks of general creditors and, lacking the ability to claim a constructive trust, have a more difficult time regaining its property. *See BCCI Holdings*, 46 F.3d at 1191–92. In contrast, if the act is characterized as larceny by trick or embezzlement, the Museum can argue its title was never relinquished.

If SunRise can prove embezzlement upon remand, then SunRise at all times possessed vested legal title or a superior legal interest over the money and Emor did not, which means the government never had a valid legal interest. *See* 21 U.S.C. § 853(n)(6)(A) (stating a petitioner may seek an amendment of forfeiture, if a petitioner possessed title that "vested in the petitioner rather than the defendant"). Suffice it to say, SunRise may be able to establish a vested legal interest in the $2 million dollars, thus stating a valid claim.[2]

---

[2] Because SunRise could not claim title to or possession of the Lexus at the time of the wire transfer from SunRise to Core, SunRise could only have had a superior interest in the Lexus at the time of the acts giving rise to forfeiture through the imposition of a constructive trust. But, as we explain below, this Court does not

B

In an effort to give the district court some guidance upon remand, we highlight some potential issues that could arise. Normally, a purported victim of crime would never need to claim a vested or superior interest to obtain its money back from the perpetrator. In many cases, a criminal defendant pleads guilty to defrauding an identifiable victim. At sentencing, the victim seeks restitution, *see* 18 U.S.C. § 3663A(c)(1)(A)(ii), and if restitution is ordered and the government has seized assets belonging to the crime victim, it often returns them. Similarly, the U.S. Attorney's Office would usually recommend restoration of forfeited assets to a victim who is named in the restitution order. Status Hearing at 13, United States v. Emor, No. 10-CR-298-PLF (D.D.C. Aug. 2, 2011), ECF No. 50 ("Status Hearing").

This is, however, not a typical third party case. The government initially charged Emor with a scheme to defraud the District of Columbia and SunRise. The district court dismissed—with prejudice—the counts alleging a scheme whereby Emor, through SunRise, defrauded the District. But when the government offered Emor a guilty plea to a single count of taking money from "SunRise's bank accounts," it failed to identify a victim.[3] At Emor's change of plea hearing,

---

recognize the constructive trust doctrine in federal criminal forfeiture proceedings. *See infra*, at 21.

[3] The Statement of Offense accompanying Emor's guilty plea claims Emor fraudulently obtained money from SunRise's bank accounts, not from the District. *See* J.A. 71. ¶ 7 ("A goal of the scheme and artifice was for defendant Emor to fraudulently obtain money, *from SunRise's bank accounts*, for his own use and benefit . . .") (emphasis added); J.A. 71 ¶ 8 ("It was part of the scheme and artifice that defendant Emor, through various misrepresentations

the district court asked how it could "take a plea" without knowing the identity of the victim, and the government responded that the court could determine the identity of the victim at sentencing.[4] Status Hearing, at 5. After Emor pled guilty, the government took the position that, for restitution and forfeiture purposes, the victim was the District of Columbia. This meant SunRise could be denied restitution (it *was not* the victim) and the government was free to argue SunRise was Emor's alter ego (SunRise *was* the defendant). The government was candid about the reasons for its unorthodox approach: it would permit the forfeiture determination to be made in "a compressed evidentiary hearing . . . with a preponderance standard and the hearsay rules, obviously not applying," *see* Status Hearing, at 5–6, United States v. Emor, No. 10-CR-298-PLF (D.D.C. Aug. 3, 2011), ECF No. 59 ("Status Hearing II"), and without agreement as to the nature of the offense.

---

and omissions of material facts, used the money *obtained from SunRise's bank accounts* in a manner unrelated to the education of students with disabilities at SunRise.") (emphasis added).

[4] While establishing the precise identity of the victim(s) of the fraud is not a required element of wire fraud, as a practical matter it is difficult to conceive how the government could prove a violation of a statute intended to punish those who deprive others of their property, without identifying in some manner who those "others" were. *See Pasquantino v. United States*, 544 U.S. 349, 355 (2005) (holding that an element of wire fraud includes that the object of the fraudulent scheme be money or property "in the victim's hands"); *United States v. Madeoy*, 912 F.2d 1486, 1492 (D.C. Cir. 1990) ("We reject the appellants' contention that the indictment did not charge a scheme or artifice to defraud a *victim* of property.") (emphasis added).

Fraudulent schemes are not fungible. They come in many forms and courts must consider the nature of the scheme to determine how to connect the dots—who was defrauded and how—and the amount of harm caused or intended. *See United States v. Munoz*, 430 F.3d 1357, 1370 (11th Cir. 2005) ("Fraudulent schemes, however, comes in various forms, and we must consider the nature of the scheme in determining what method is to be used to calculate the harm caused or intended"). Even when guilt is established by plea rather than a jury trial, the factual basis underlying the plea plays an important role in assuring a knowing, intelligent, and voluntary plea and resolving questions about restitution and forfeiture. *See United States v. Gonzalez*, 647 F.3d 41, 65–66 (2d Cir. 2011). Here, when the district court suggested the superseding information was "open to interpretation," defense counsel disputed this interpretation, insisting everyone was "operating under the assumption that this is stealing from SunRise," and SunRise "was the victim." Status Hearing, at 20, 22, 23. Both the court and defense counsel acknowledged the parties would need to be on the same page "as to what the thrust of the charge is" before Mr. Emor could enter a "knowing, intelligent, and voluntary plea." *Id.* at 23.

District courts must determine the crime before a defendant pleads guilty and is sentenced. The government's strategic determination not to identify the victim in the plea—arguing that the court could determine the victim at or after the defendant's sentence—has logical consequences. Contradictory factual determinations could possibly sever the nexus between the criminal conviction and the forfeiture. *See* 21 U.S.C. § 853(a); FED. R. CRIM. P. 32.2(b)(1)(A) (stating there must be a nexus "between the property and the offense" in order for property to be forfeitable). On remand, the district court must ensure that its findings of fact and conclusions of law do not contradict the factual and liability admissions

within the Statement of Offense. By the same token, the government may not use the forfeiture proceeding to try and establish additional facts—including the identity of the fraud victim—that would contradict the factual basis for Emor's plea or alter the scope of legal liability to which he pled in the Statement of Offense. *See* Status Hearing II, at 5–6.

IV

Several of SunRise's claims fail as a matter of law, and the district court need not consider them on remand.

A

SunRise claims it possessed "documents evidencing" its ownership of Core, "through the members it appointed, who hold their membership interest for the benefit and on behalf of Sunrise" J.A. 289. As the district court noted, "[w]hat SunRise means by this is not clear." J.A. 306–07. What is apparent is that SunRise failed to provide any legal or factual support of its ownership claim. *Cf. Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The district court correctly found SunRise failed to state a valid claim of ownership over Core.

B

SunRise further contends it possesses a legal interest because Core assigned its rights to SunRise and SunRise was a bona fide purchaser. Neither of these claims withstands scrutiny.

Under the criminal forfeiture statute's relation back provision, these theories fail because title to forfeited property vested in the government upon commission of the criminal act giving rise to forfeiture. 21 U.S.C. § 853(c). Emor's fraud

occurred at the very latest when SunRise wired the money to Core in 2010, and thus well before Core's alleged assignment to SunRise in May 2012. Core could not have taken a cognizable interest in the property because its interest vested at the same time as the government's interest. *See* 21 U.S.C. § 853(c). So Core had no right to seek return of its property. Consequently, as to its assignment from Core, SunRise is restricted to arguing that it is a bona fide purchaser for value without reason to believe the property was subject to forfeiture.

SunRise's allegations were insufficient to meet that burden. *See Smith v. Wells Fargo Bank*, 991 A.2d 20, 26 (D.C. 2010) (holding that a bona fide purchaser for value is one who "acquired . . . interest in a property for valuable consideration and without notice of any outstanding claims which are held against the property by third parties"). Given SunRise's attempt to intervene in Emor's criminal proceedings in 2011 and the government's seizure of the property a year before, SunRise had sufficient cause to believe the property was subject to forfeiture when Core assigned its right to SunRise in 2012. *Cf. United States v. Huntington Nat'l. Bank*, 682 F.3d 429, 436 (6th Cir. 2012) ("[T]he whole purpose of 21 U.S.C. § 853(n)(6)(B) is to protect innocent purchasers who acquire property *without notice* of the government's superior interest . . . in the forfeited property.") (emphasis added).

C

Finally, SunRise contends it possessed a constructive trust in the forfeited property superior to the government's interest. SunRise acknowledges its constructive trust theory is in considerable tension with *BCCI Holdings*, but it asks us to limit *BCCI Holdings* to the RICO context.

While it is true *BCCI Holdings* was decided in the RICO context and under a different statute, *see* 18 U.S.C. § 1963, it is also true the two forfeiture statutes contain identical language, and "it appears that no court has interpreted these two provisions differently," *United States v. BCCI Holdings (Luxembourg) S.A.*, 956 F. Supp. 5, 9 n.4 (D.D.C. 1997). *BCCI Holdings* is not limited solely to the RICO context. *See Clark v. Martinez*, 543 U.S. 371, 378 (2005) ("To give these same words a different meaning . . . would be to invent a statute rather than interpret one.").

SunRise did not specifically request that we overturn *BCCI Holdings*. Such a strategy would have support. Every circuit to consider the constructive trust question in the context of criminal forfeiture has rejected the analysis in *BCCI Holdings*. *E.g.*, *Willis Mgmt. (Vermont), Ltd. v. United States*, 652 F.3d 236, 244–45 (2d Cir. 2011); *United States v. Salti*, 579 F.3d 656, 670 (6th Cir. 2009); *United States v. Shefton*, 548 F.3d 1360, 1366 (11th Cir. 2008); *see also Osin v. Johnson*, 243 F.2d 653 (D.C. Cir. 1957). However, since we cannot overrule a prior panel's decision, except via an *Irons* footnote or en banc review, we leave this issue for another day. *See Oakey v. U.S. Airways Pilots Disability Income Plan*, 723 F.3d 227, 232 (D.C. Cir. 2013) *cert. denied*, 134 S. Ct. 1513 (2014).

IV

For the foregoing reasons, the district court's judgment is Affirmed in Part, Reversed in Part, and Remanded.

*So ordered.*

WILKINS, *Circuit Judge*, concurring: I join in the Court's result and much of its rationale. I agree that SunRise has standing to petition as the alleged victim of Emor's embezzlement and that SunRise is not estopped from demonstrating its "interest" in the forfeited property based on findings of fact the District Court made before it was entitled to intervene in the proceedings. I write separately due to my concern that Section III.B. of the majority opinion may engender confusion about the scope of wire fraud or criminal forfeiture.

I agree with the majority that the government is not required to establish the identity of a specific victim in order to prove wire fraud, Maj. Op. at 17 n.4, as the nine circuits to consider the question have uniformly held. *See United States v. Tum*, 707 F.3d 68, 75-76 & n.6 (1st Cir. 2013) (citing cases from the Fourth, Fifth, Seventh, Ninth and Eleventh circuits); *see also United States v. McAuliffe*, 490 F.3d 526, 533 (6th Cir. 2007); *United States v. Trapilo*, 103 F.3d 547, 552 (2d Cir. 1997); *United States v. Pelullo*, 964 F.2d 193, 216 (3d Cir. 1992). As we have held, wire fraud requires proof only of 1) knowing and willful entry into a scheme to defraud and 2) use of an interstate wire communication in furtherance of the scheme. *See United States v. Tann*, 532 F.3d 868, 872 (D.C. Cir. 2008). Consequently, I disagree with the suggestions throughout the majority opinion that the government needed to identify the victim of the wire fraud in the charging documents, or that the District Court needed to determine whether SunRise, the District of Columbia, or the federal government was the victim of Emor's fraud at the time of the guilty plea.

Wire fraud comes in many shapes and sizes. One paradigmatic iteration of the offense transpires when the defendant diverts for personal use funds that a donor provided to a nonprofit corporation for a specific purpose. In such cases, the donor/grantor can be properly characterized as the

victim even though the defendant took the property directly from the nonprofit. *See, e.g.*, *United States v. Treadwell*, 760 F.2d 327, 335-37, 337 n.17 (D.C. Cir. 1985); *Post v. United States*, 407 F.2d 319, 329 (D.C. Cir. 1968); *United States v. Kilpatrick*, No. 10-20403, 2013 WL 4041866, at *18-19 (E.D. Mich. Aug. 8, 2013). As the majority notes, the diversion of funds could also be characterized as an embezzlement in which the nonprofit organization – here SunRise – is the victim. Maj. Op. at 14.

In this case, the Information and Statement of Offense expressly noted that the District and federal governments were SunRise's sole sources of funds and that the funds were provided exclusively as reimbursement for special education services, and characterized Emor's scheme as involving the use of SunRise's funds "in a manner unrelated to the education of students with disabilities at SunRise."[1] Superseding Information at 1, 3, *United States v. Emor*, No. 10-cr-298 (D.D.C. July 22, 2011), ECF No. 44; J.A. 69, 71. Thus, slightly differing from the majority, Maj. Op. at 18-19, my reading of the record is that the prosecution and Emor agreed at the time of the guilty plea that the wire fraud scheme involved illegally diverting funds restricted for educational uses to Emor's personal use; and the parties went forward with the plea with the full understanding that, in subsequent proceedings, the government would argue that the victim of Emor's fraudulent scheme was the District, while Emor would argue that the victim was SunRise. Transcript of Aug. 3, 2011 at 14-15, *Emor* (D.D.C. Aug. 3, 2011), ECF No. 59.

---

[1] Echoing the Internal Revenue Code, SunRise's articles of incorporation provide that "[n]o part of the net earnings of the corporation shall inure to the benefit of, or be distributable to," its officers. J.A. 183; 26 U.S.C. § 501(c)(3).

Indeed, the government had ample basis to have questions about the role of SunRise in Emor's scheme. When the government subpoenaed SunRise's documents related to Core Ventures, SunRise produced only brief, incomplete notes purportedly reflecting two Board of Directors meetings to document its $2 million "loan." J.A. 232, 237-38. After the guilty plea, the evidence presented at the hearings indicated that SunRise's Board at relevant times consisted solely of Emor, his college-age son, and a young SunRise employee; that the Board neglected to meet at all during 2008; that it completely failed to document major activities such as the purported loan to Core Ventures; that it approved hundreds of thousands of dollars in purchases of luxury vehicles, housing, and gifts for Emor and his family members; and that it approved a $500,000 bonus to Emor while he was incarcerated for selling stolen computers. J.A. 214-44. Of course, SunRise will have the opportunity to rebut or explain this evidence on remand, and to show that SunRise was not complicit in Emor's diversion. Nonetheless, I think it unfair to suggest that the government should have been certain that SunRise was a victim at the time of the guilty plea based on a reasonable assessment of the facts as they would have appeared to the government at that time.

In sum, the District Court can sort out any remaining disputed issues of fact and law on remand, including SunRise's ability to demonstrate its "legal interest" in the forfeited property and whether it is someone "other than the defendant." 21 U.S.C. § 853(n)(2).