*RECOMMENDED FOR FULL-TEXT PUBLICATION*
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 12a0388p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

_____

UNITED STATES OF AMERICA,

          *Plaintiff-Appellee*,

*v.*

REAL PROPERTY AND RESIDENCE LOCATED
AT 4816 CHAFFEY LANE et al.,

          *Defendants*,

MEGAN COFFMAN and BANIEL, LLC,

          *Claimants-Appellants.*

No. 12-5175

Appeal from the United States District Court
for the Eastern District of Kentucky at Lexington.
Nos. 5:08-cv-00410; 5:09-cr-00181-2—Karen K. Caldwell, District Judge.

Decided and Filed: November 16, 2012

Before: MOORE, GILMAN, and KETHLEDGE, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:** Brian M. Johnson, BINGHAM GREENEBAUM DOLL LLP, Lexington, Kentucky, for Appellants. Charles P. Wisdom, Jr., Wade T. Napier, UNITED STATES ATTORNEY'S OFFICE, Lexington, Kentucky, for Appellee.

_____

**OPINION**

_____

KAREN NELSON MOORE, Circuit Judge. This is a dispute over one 2003 Azimut Solar Yacht (Hull ID No. XAX74077G203)—henceforth, "the yacht." Claimants-Appellants are Baniel, LLC ("Baniel") and Megan Coffman ("Coffman");

1

Baniel owns the yacht, and Coffman owns Baniel.[1]  They appeal the district court's order granting a motion for an interlocutory sale of the yacht, which we **AFFIRM**.

## I.  FACTS AND PROCEDURE

This appeal stems from one aspect of long-running civil and criminal forfeiture proceedings.  In August 2008, Baniel, Coffman, and her husband Bryan Coffman ("Bryan") obtained financing from Bank of America to help purchase the yacht, giving Bank of America in turn a secured interest in the yacht.  R. 36-2 (Note) (Page ID #240–45).  On October 7, 2008, the United States filed a civil forfeiture *in rem* complaint against several properties, owned and controlled by Coffman and Bryan, that it alleges were proceeds of fraud and money laundering.  R.1 (Verified Compl.) (Page ID #1–4).  The yacht was added to the complaint on December 5, 2008.  R. 6 (Am. Verified Compl.) (Page ID #31).  Given the pending criminal investigations against both Coffmans, the district court immediately stayed any civil forfeiture proceedings.[2]  R. 5 (*Ex Parte* Order of 10/8/08) (Page ID #29–30).  Coffman filed a verified claim to the yacht on September 29, 2009.  R. 19-3 (Claims of Megan Coffman at 3) (Page ID #90).  Coffman was acquitted of all criminal charges in May 2011, but Bryan was convicted of mail fraud, wire fraud, securities fraud, and money laundering.  R. 354 (Jury Verdict) (Page ID #3705–09) (Case No. 5:09-cr-181).  The criminal proceedings are still ongoing.[3]

---

[1] Appellants are rather fluid in their treatment of the corporate form in their prior briefing:  some briefs to the district court refer exclusively to Baniel, others to Coffman, some to both, and at least one, *see* R. 53 (Reply Mem. in Supp. of Mot. for Release of Property at 4) (Page ID #331), appears to conflate the two.  The briefs submitted to this court refer to Baniel and Coffman together, and we follow this convention.

[2] Docket citations in this opinion are to the civil forfeiture proceedings, rather than to the now-combined criminal proceedings (Case No. 5:09-cr-181), unless otherwise indicated.

[3] When Baniel and Coffman filed their initial brief in this court, no preliminary forfeiture order had been issued in the criminal proceedings.  Appellant Br. at 7.  A week later, the district court released its preliminary order of forfeiture, which found that "[t]he yacht is subject to forfeiture," and is to be "condemned and forfeited."  R. 461 (Mem. Op. & Prelim. Order of Forfeiture of 4/16/12 at 15–16) (Page ID #7530–31) (Case No. 5:09-cr-181).  No final forfeiture order has yet been announced.  *See id.* at 5 (Page ID #7520) ("This Order has no impact on third-party ownership.  If there are third-party claims to the property, those parties must file claims and the Court will evaluate those claims at future ancillary proceedings.").

Payments to Bank of America have not been made since December 2009, and at the latest estimate approximately $637,000 is the balance owed on the note. R. 51 (Bank of Am. Mem. in Opp'n at 1) (Page ID #319). In February 2011, Bank of America and the United States filed a joint motion for an interlocutory sale of the yacht. R. 39 (Joint Mot. for an Interlocutory Sale) (Page ID #248). The district court eventually allowed briefing on the matter; Baniel also filed a motion for release of the yacht to Coffman's custody. R. 50 (Mot. for Release of Property) (Page ID #304). These motions remained pending until January 30, 2012, when Bank of America and the United States renewed their motion. R. 55 (Renewed Joint Mot. for an Interlocutory Sale) (Page ID #339). On February 17, 2012, the district court ordered the interlocutory sale, denied release of the yacht to Baniel, and joined the civil action with the ongoing criminal action. *United States v. Real Prop. & Residence Located at 4816 Chaffey Lane* (*Chaffey Lane I*), No. 5:08-410, 2012 WL 529239 (E.D. Ky. Feb. 17, 2012). Baniel and Coffman sought a stay of the sale pending appeal, which was denied by the district court. *United States v. Real Prop. & Residence Located at 4816 Chaffey Lane* (*Chaffey Lane II*), No. 5:09-181, 2012 WL 1380239 (E.D. Ky. Apr. 20, 2012). Baniel and Coffman appealed separately both the denial of a stay and the order granting the interlocutory sale. This court also denied a stay. *United States v. Real Prop. & Residence Located at 4816 Chaffey Lane* (*Chaffey Lane III*), No. 12-5175 (6th Cir. May 10, 2012) (unpublished order). Baniel and Coffman now appeal the order granting an interlocutory sale.

## II.  JURISDICTION

This appeal comes to us under the collateral-order doctrine. In our May 2012 order, we concluded that appellate jurisdiction exists. *Chaffey Lane III*, at 1. As noted, we also denied a stay of this interlocutory sale order pending our review, but observed that "the sale does not appear to be imminent." *Id.* Because the parties have given no indication that the yacht has since been sold, and because the district court has yet to release a final forfeiture order, we conclude that a live controversy is still before us.

## III.  INTERLOCUTORY SALE CLAIM

Rule G(7)(b)(i) of the Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions establishes the following procedure for interlocutory sales during forfeiture actions *in rem*:

> **Order to Sell.**  On motion by a party or a person having custody of the property, the court may order all or part of the property sold if:
> (A) the property is perishable or at risk of deterioration, decay, or injury by being detained in custody pending the action;
> (B) the expense of keeping the property is excessive or is disproportionate to its fair market value;
> (C) *the property is subject to a mortgage or to taxes on which the owner is in default*; or
> (D) the court finds other good cause.

FED R. CIV. P. SUPP. G(7)(b)(i) (2009) (emphasis added).  No one disputes that the yacht is subject to a mortgage, and that the mortgage has been in default since December 2009.[4]  On this evidence, and on the basis of Rule G(7)(b)(i)(C), the district court ordered an interlocutory sale.

Baniel and Coffman argue that the district court failed to recognize statutory limitations applicable to Rule G(7).  We review questions of law, including matters of statutory interpretation,  de novo.  *United States v. Parrett*, 530 F.3d 422, 429 (6th Cir. 2008).  When a district court exercises its discretionary authority to act, we review that exercise for abuse of discretion.  *See Chaffey Lane III*, at 3 ("The district court's exercise of discretion in ordering such a sale requires a 'careful[] weigh[ing of] the competing interests in each case'" (quoting FED R. CIV. P. SUPP. G(7) advisory comm. notes)); *see also United States v. Approximately 81,454 Cans of Baby Formula*, 560 F.3d 638, 641 (7th Cir. 2009) (applying "a deferential standard of appellate review" to a Rule G(7) sale).

---

[4]Baniel and Coffman have offered to bring the mortgage current, but Bank of America has declined the offer, and in any event has already accelerated and charged off the mortgage.  R. 51 (Bank of Am. Mem. in Opp'n at 1) (Page ID #319).  Baniel and Coffman have also unsuccessfully sought to buy out Bank of America's interest at a discount from the original note value.  R. 53 (Reply Mem. in Supp. of Mot. for Release of Property at 4–5) (Page ID #331–32).

Baniel and Coffman argue that the district court incorrectly relied on Rule G(7)(b)(i). In particular, they argue that the following two subsections of 18 U.S.C. § 981(g) constrain a court's ability to order an interlocutory sale:

> (1) Upon the motion of the United States, the court shall stay the civil forfeiture proceeding if the court determines that civil discovery will adversely affect the ability of the Government to conduct a related criminal investigation or the prosecution of a related criminal case.
>
> . . .
> (6) Whenever a civil forfeiture proceeding is stayed pursuant to this subsection, the court shall enter any order necessary to preserve the value of the property or to protect the rights of lienholders or other persons with an interest in the property while the stay is in effect.

The current matter is indeed a civil forfeiture proceeding that has been stayed while criminal proceedings against Bryan continue. *Chaffey Lane I*, 2012 WL 529239, at *1. Accordingly, Baniel and Coffman argue that an interlocutory sale is appropriate only if it both satisfies Rule G(7)(b)(i) *and also*, in light of § 981(g)(6), "is necessary to protect the asset's value or the rights of lienholders and third parties."[5] Reply Br. at 1.

Baniel and Coffman are partially correct—procedures under Rule G(7) must be employed consistently with applicable civil forfeiture statutes. *See* FED R. CIV. P. SUPP. G(1) ("This rule governs a forfeiture action in rem *arising from a federal statute*.") (emphasis added). Title 18 U.S.C. § 981 ("Civil forfeiture"), as well as 18 U.S.C. § 983 ("General rules for civil forfeiture proceedings"), authorize civil forfeiture proceedings, and the two statutes provide a basis for the government's complaint. *See* R. 6 (Am. Compl. at 3) (Page ID #33). But we disagree with Baniel and Coffman as to the relationship between § 981(g)(6) and Rule (G)(7). The Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions, which are part of the Federal Rules of Civil Procedure, were adopted under the authority of the Rules Enabling Act, 28 U.S.C. § 2072. *See U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383,

---

[5] Baniel and Coffman further argue that *multiple* subsections of Rule G(7)(b)(i) must be satisfied in order to permit an interlocutory sale—merely proving default, in this case, is not sufficient in their view. Appellants Br. at 13; Reply Br. at 8–10. There is no statutory support for this position; Rule G(7)(b)(i) is disjunctive, so any one disjunct can satisfy its terms.

390 (3d Cir. 2002). Rule G(7) thus provides a district court with authority that is independent of 18 U.S.C. § 981. In particular, § 981(g)(6) governs situations, like this one, where a civil forfeiture proceeding is stayed in light of a related criminal investigation and prosecution. The plain text of § 981(g)(6) states that a district court "shall enter any order necessary to preserve the value of the property or to protect the rights of lienholders or other persons with an interest in the property while the stay is in effect." § 981(g)(6); *cf. United States v. Certain Real Prop., Located at 317 Nick Fitchard Rd.*, 579 F.3d 1315, 1321 & n.7 (11th Cir. 2009) (concluding that § 981 provides protection to property claimants, as well as criminal defendants, "while retaining the usefulness of civil forfeitures in law enforcement activities"). The implication of this requirement, then, is that a court may not enter an order that violates § 981(g)(6)—that is, an order that would destroy a property's value or that would harm the rights of persons with an interest in the property—because if it did, that same court would have to issue a new order that undid the violating order. Accordingly, an order for interlocutory sale of property subject to a stayed civil forfeiture proceeding must be made consistent both with the requirements of Rule G(7) and with obligations imposed by § 981(g)(6).[6]

We disagree with Baniel and Coffman, however, as to what duties § 918(g)(6) imposes. They claim that "a court shall *only* enter orders that are '*necessary*' to preserve the value of allegedly forfeitable property or to protect the rights of lienholders." Appellants Br. at 11 (first emphasis added). This reading creates a threshold to judicial action that does not exist in the statute. Section 981(g)(6) requires a court to enter an order where necessary either to preserve property value or to protect the rights of interested parties. But it does not preclude a court from acting where neither of these concerns are manifest. Rather, to the extent that § 981(g)(6) constrains a court's ability

---

[6]In suggesting that Rule G(7) may be applied without constraints, the government directs us to the following rule of criminal procedure: "At any time before entry of a final forfeiture order, the court, in accordance with Supplemental Rule G(7) of the Federal Rules of Civil Procedure, may order the interlocutory sale of property alleged to be forfeitable." FED. R. CRIM. P. 32.2(b)(7). However, Rule 32.2(b)(7) deals with criminal forfeitures, whereas here we are presented with a civil forfeiture proceeding.

to order an interlocutory sale under Rule G(7), it does so where an interlocutory sale would diminish the asset's value or harm the rights of a lienholder or third party.

With the statutory understanding in place, we conclude that the district court did not abuse its discretion in ordering an interlocutory sale. First, it is uncontested that the yacht is "is subject to a mortgage . . . on which the owner is in default," and so Rule G(7) is satisfied. Second, § 981(g)(6) does not prohibit a sale on these facts. The value of the underlying property is not at risk from an interlocutory sale, because the yacht will be sold "in a commercially reasonable manner taking into account the characteristics of the yacht." *Chaffey Lane I*, 2012 WL 529239, at *2. And, because the yacht is subject to a defaulted mortgage, Baniel and Coffman's interest in the property is still adequately protected. As the district court explained when denying a stay of this order, because of its default, "Baniel has no right to the yacht itself. At best, Baniel would have a right to any proceeds remaining after the note is paid and that right has no bearing on whether the yacht should be sold." *Chaffey Lane II*, 2012 WL 1380239, at *3. Neither Baniel's nor Coffman's rights are harmed by an interlocutory sale. Accordingly, the district court did not abuse its discretionary authority under Rule G(7) to order a sale, and did not run afoul of any constraints emanating from § 981.

Finally, we have granted the government's motion to strike two arguments—that the district court violated Rule G(7)(b)(iv), and that the inability to recover the yacht violated due process—on the basis that they are first developed in Baniel and Coffman's reply brief; we therefore have no occasion to address these arguments. *See Hills v. Kentucky*, 457 F.3d 583, 588 (6th Cir. 2006) (citing *Thaddeus-X v. Blatter*, 175 F.3d 378, 403 n.18 (6th Cir. 1999) (en banc)), *cert. denied*, 549 U.S. 1130 (2007).

## IV.  CONCLUSION

For the reasons stated above, we **AFFIRM** the judgment of the district court.