RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)

File Name: 17a0281p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

UNITED STATES OF AMERICA,

*Plaintiff-Appellee,*

*v.*

GEORGE MARCUS HALL,

*Defendant,*

KNOX COUNTY, TENNESSEE,

*Petitioner-Appellant.*

No. 16-6512

Appeal from the United States District Court
for the Eastern District of Tennessee at Knoxville.
No. 3:15-cr-00154-1—Pamela Lynn Reeves, District Judge.

Decided and Filed:  December 13, 2017

Before:  MOORE, WHITE, and DONALD, Circuit Judges.

_____

**COUNSEL**

**ON BRIEF:**  Daniel A. Sanders, KNOX COUNTY, Knoxville, Tennessee, for Appellant. Anne-Marie Svolto, UNITED STATES ATTORNEY'S OFFICE, Knoxville, Tennessee, for Appellee.

MOORE, J., delivered the opinion of the court in which WHITE and DONALD, JJ., joined.  WHITE, J. (pg. 16), delivered a separate concurring opinion.

_____

**OPINION**

_____

KAREN NELSON MOORE, Circuit Judge.  In this case, we are called upon to decide whether Knox County, Tennessee has standing to file a claim in district court asserting its undisputed right to collect delinquent property taxes on real property that is subject to criminal forfeiture by the U.S. government and to assess whether the district court abused its discretion in denying Knox County's motion for an interlocutory sale of the seized property.  Because Knox County has a legally cognizable interest in the property in the form of a tax lien, the district court erred in dismissing for lack of standing Knox County's claim.  This does not mean, however, that Knox County is necessarily entitled to a hearing on the validity of its claim, as the district court may be able to ascertain the scope of Knox County's interest on a motion for summary judgment by the government without holding a hearing.  Because the district court must account for Knox County's interest before entering a final order of forfeiture, we **VACATE** the district court's final order of forfeiture and **REMAND** this case for proceedings consistent with this decision.

We further hold that the district court did not abuse its discretion when it denied Knox County's motion for an interlocutory sale of the property.  Accordingly, we **AFFIRM** the district court's denial of the motion for interlocutory sale.

## I. BACKGROUND

In late 2015, the United States charged George Marcus Hall with running an unlawful gambling operation and money laundering scheme.  R. 1 (Information at 1–2) (Page ID #1–2).  Pursuant to a plea agreement with the U.S. government, Hall agreed to forfeit all properties that he had acquired with funds derived from his illicit activities.  R. 2 (Plea Agreement at 7) (Page ID #22).  In December 2015, the United States initiated criminal forfeiture proceedings and obtained a preliminary forfeiture order for eighteen parcels of real property owned by Hall and located in Knox County, Tennessee.  R. 12 (Agreed Prelim. Order of Forfeiture at 9–11) (Page ID #78–80).  Upon learning of the forfeiture action, "Knox County determined that Hall

owed a substantial amount of delinquent real property tax on the properties he [had] agreed to forfeit." Appellant Br. at 9. Under Tennessee law, these back taxes, along with the "penalties, interest, and costs accruing thereon," gave Knox County a first lien on the property. *See* Tenn. Code Ann. § 67-5-2101.

By federal statute, a party asserting an interest in property that is subject to criminal forfeiture may "petition the court for a hearing to adjudicate the validity of his alleged interest in the property" within thirty days of final publication of notice or receipt of direct written notice of an entry of an order of forfeiture, whichever is earlier. 21 U.S.C. § 853(n)(2). Knox County filed a first verified claim and petition for a hearing asserting its interest in the seized property after the thirty-day deadline had passed. R. 79 ([First] Verified Claim at 1–4) (Page ID #711–14). The district court subsequently amended the preliminary forfeiture order to cover an additional four parcels of property, three of which are located in Knox County, *see* R. 97 (Am. Agreed Preliminary Order at 8–11) (Page ID #850–53), and Knox County filed a timely second verified claim and petition for hearing in July 2016, R. 104 ([Second] Verified Claim at 1–4) (Page ID #892–95).

In its second verified claim, Knox County requested "a hearing to adjudicate the validity of Knox County's rights and interests" in the property subject to the amended preliminary forfeiture order, and asked the district court to enter an order "[d]irecting an interlocutory sale of the [subject] Property," "[d]elaying entry of the final order of forfeiture" until the date of the sale, "[s]evering the Property" until Knox County receives full payment, allowing the current owner to keep the property "subject to a lien in favor of the Government to the extent of the forfeitable interest in the property," or authorizing some alternative remedy "providing that Knox County will continue to receive annual tax revenues[,] penalties, interest, and costs that accrue in connection with the Property under state law." *Id.* at 2–3 (Page ID #893–94). Also on July 12, 2016, Knox County "move[d] for an order directing the interlocutory sale of each parcel of real property subject to this forfeiture proceeding located in Knox County," R. 106 (Mot. for Interlocutory Sale at 1) (Page ID #899).

In response, the United States "aver[ed] that any taxes and interest that are owed as of the date of the entry of a final order of forfeiture in this case will be honored." R. 112 (Response to

Motions at 8) (Page ID #937). The United States expressly offered to pay "whatever taxes, plus interest" are owed to Knox County "up until the time of the final order of forfeiture," regardless of whether Knox County received notice of the forfeiture or filed a claim. R. 80 (Hr'g Tr. at 18) (Page ID #732). The United States later clarified that its offer to pay the "present value of all of the County's taxes that have accrued" included "interest on taxes assessed *prior* to entry of a final order of forfeiture [that had] . . . continue[d] to accrue up until the date of the sale." R. 114 (Opp'n to Objections to Magistrate Judge's R & R at 3–4) (Page ID #951–52). And the United States' promise is backed by its "pattern of practice of always paying" such sums on forfeited properties, regardless of whether a taxing authority files a claim asserting its interest under 21 U.S.C. § 853(n). *See, e.g.*, R. 80 (Hr'g Tr. at 19) (Page ID #733) ("We have done it in every case [in] at least the last ten years.").

But while the United States had "no opposition to recognizing Knox County's property tax interest that have [sic] accrued up through the date of entry of the final order of forfeiture," R. 112 (Response to Motions at 8) (Page ID #937), the United States argued that Knox County has no legally cognizable interest in accruing taxes on the seized property once title passes to the United States because, under the Supremacy Clause, local governments may not levy taxes on federal properties. *See id.* The U.S. government therefore "object[ed] to Knox County's attempts to avoid application of the Supremacy Clause" by seeking to delay entry of a final order of forfeiture until the date of sale or to force an interlocutory sale of the properties in an effort to generate additional tax revenue. *Id.*

The district court denied Knox County's first and second verified claims on September 20, 2016. R. 119 (Dist. Ct. Op.) (Page ID #993-1019). The district court rejected Knox County's first claim as untimely, *id.* at 15–18) (Page ID #1007–10), which Knox County does not now challenge on appeal, Appellant Br. at 10 n.1. The district court then denied Knox County's second claim for lack of standing.[1] As the district court reasoned, Knox County "has no legally cognizable interest" in taxes, or the interest, penalties, and costs that would accrue on those taxes, after the final entry of the forfeiture order because as soon as the district court enters

---

[1]The district court held that the county's lack of standing served as an additional reason for denying its first verified claim. R. 119 (Dist. Ct. Op. at 18) (Page ID #1010).

a final order of forfeiture, "the U.S. Government owns the properties," R. 119 (Dist. Ct. Op. at 19) (Page ID #1011), and Tennessee law recognizes that U.S. property is "exempt from taxation," *id.* (quoting Tenn. Code Ann. § 67-5-203(a)(1)). Therefore, the district court determined that Knox County "has suffered no injury-in-fact as to this revenue." *Id.*

In addition, the district court held that Knox County lacks standing to pursue a claim for taxes accrued before forfeiture and the interest, penalties, and costs on those taxes that would accrue after forfeiture through the date of sale. The district court reasoned that "[t]he Government has already agreed to hand these funds over to the County. . . . As a result, no redress is possible as to this revenue. Redressability exists only where a court order 'would amount to a significant increase in the likelihood that the plaintiff would obtain the relief that directly redresses the injury suffered.'" *Id.* at 20 (Page ID #1012) (quoting *Hamdi ex rel. Hamdi v. Napolitano*, 620 F.3d 615, 628 n.15 (6th Cir. 2010)). The district court further held that Knox County "lacks standing to contest its right to receive any penalties whatsoever" because, under Tennessee state law, penalties accrue on tax defaults "[u]pon the filing of suits to enforce [a] tax lien against real or personal property," *id.* at 22 (Page ID #1014) (quoting Tenn. Code Ann. § 67-5-2410(a)(1)(A), and "[n]o tax suit has been filed in this case," *id.* Therefore, "the County's injury—its inability to collect penalties on back taxes—is not fairly traceable to the forfeiture." *Id.* Finally, the district court declined to adopt the equitable remedies that Knox County had proposed, and the court rejected the county's request for an interlocutory sale of the properties listed in the amended preliminary forfeiture order. *Id.* at 23–27 (Page ID #1015–19).

Ten days later, the district court entered a final order of forfeiture, which covered sixteen parcels of real property in Knox County. R. 121 (Final Forfeiture Order at 7–10) (Page ID #1029–32). Of those sixteen properties, only one—the so-called "Jones Road Parcel"—had been a subject of the county's second verified claim. Knox County then filed this timely appeal.

## II. DISCUSSION

Knox County raises two issues on appeal. First, the county challenges the district court's entry of a final order of forfeiture that purportedly failed to account for Knox County's interest in the Jones Road Parcel. Appellant Br. at 14–15. Second, Knox County contends that the district

court abused its discretion when it declined to order an interlocutory sale as to all the seized property. *Id.* at 15. The county requests that this court vacate the final order of forfeiture and remand the case to the district court "with instruction to hold an evidentiary hearing" on the county's second verified claim and its motion for interlocutory sale. *Id.* at 15–16. For the reasons set forth below, we vacate the final order of forfeiture and remand the case with instructions to proceed in a manner consistent with this opinion, and we affirm the district court's denial of Knox County's motion for an interlocutory sale.

## A. Standard of Review

"We review de novo a district court's dismissal for a lack of case or controversy." *Ermold v. Davis*, 855 F.3d 715, 718 (6th Cir. 2017) (citing *Demis v. Sniezek*, 558 F.3d 508, 512 (6th Cir. 2009)); *see also United States v. Salti*, 579 F.3d 656, 667 (6th Cir. 2009) ("Whether a claimant has standing to contest a forfeiture is a determination of law, and therefore this court reviews the district court's determination of standing de novo." (quoting *United States v. 37.29 Pounds of Semi-Precious Stones*, 7 F.3d 480, 483 (6th Cir. 1993))). The district court's decision not to order an interlocutory sale is reviewed for abuse of discretion. *See United States v. Real Prop. & Residence Located at 4816 Chaffey Lane*, 699 F.3d 956, 960 (6th Cir. 2012). "The district court abuses its discretion when it 'relies on erroneous findings of fact, applies the wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment.'" *Harris v. City of St. Clairsville*, 330 F. App'x 68, 70 (6th Cir. 2008) (quoting *Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639, 644 (6th Cir. 2006)).

## B. Denial of Second Verified Claim

As noted above, a third party asserting a legal interest in property subject to criminal forfeiture must "petition the court for a hearing to adjudicate the validity of his alleged interest in the property" within thirty days of the final publication of notice or his receipt of direct written notice, whichever is earlier. 21 U.S.C. § 853(n)(2). "The hearing on the petition shall, to the extent practicable and consistent with the interests of justice, be held within thirty days of the filing of the petition." *Id.* § 853(n)(4). However, under the Federal Rules of Criminal Procedure, a "court may, on motion, dismiss the petition for lack of standing, for failure to state a

claim, or for any other lawful reason" before holding a hearing. FED. R. CRIM. P. 32.2(c)(1)(A); *Salti*, 579 F.3d at 664 ("[D]iscovery and a hearing are not required prior to a ruling on a motion to dismiss [a petition].").

Article III standing requires a party invoking federal jurisdiction to demonstrate that it has suffered an "'injury in fact' . . . which is (a) concrete and particularized," *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citing *Allen v. Wright*, 468 U.S. 737, 756 (1984), *abrogated on other grounds by Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377 (2014); *Warth v. Seldin*, 422 U.S. 490, 508 (1975); *Sierra Club v. Morton*, 405 U.S. 727, 740 n.16 (1972)), and "(b) 'actual or imminent, not conjectural or hypothetical,'" *id.* (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 155 (1990)); that the injury is "fairly . . . trace[able] to the challenged action of the defendant," *id.* (quoting *Simon v. E. Ky. Welfare Rights Org.*, 426 U.S. 26, 41–42 (1976) (alterations in original); and that it is "'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision,'" *id.* at 561 (quoting *Simon*, 426 U.S. at 38, 43).

We have previously held that potential third-party claimants satisfy Article III's standing requirements when they "claim a facially colorable interest in the seized property." *Salti*, 579 F.3d at 667 (quoting *United States v. $515,060.42 in U.S. Currency*, 152 F.3d 491, 497–98 (6th Cir. 1998)). Such an interest establishes standing "because an owner or possessor of property that has been seized necessarily suffers an injury that can be redressed at least in part by the return of the seized property." *$515,060.42 in U.S. Currency*, 152 F.3d at 497 (citing *United States v. Contents of Accounts Nos. 3034504504 and 144-07143*, 971 F.2d 974, 985 (3d Cir. 1992)). In determining whether a claimant has a legally cognizable interest in property subject to forfeiture, courts "look to 'the law of the jurisdiction that created the property right to determine the petitioner's legal interest.'" *Salti*, 576 F.3d at 668 (quoting *United States v. Speed Joyeros, S.A.*, 410 F. Supp. 2d 121, 125 (E.D.N.Y. 2006)).

Here, Knox County's second verified claim alleged that Knox County holds a first lien, superior to all other interests, securing its "right to receive payment of property taxes assessed against each parcel of real property listed in the Amended Agreed Preliminary Order of Forfeiture . . . and located in Knox County." R. 104 (Second Verified Claim at 1) (Page ID

#892) (internal citation omitted).  In support of its claim, Knox County pointed to Tennessee state tax law.  *See id.* at 1–2 (Page ID #892–93); *see also* Tenn. Code Ann. § 67-5-2101.  Knox County's tax lien constitutes a legally cognizable interest in the seized property, and thus Knox County had constitutional standing to file a petition under 21 U.S.C. § 853(n).  *See $515,060.42 in U.S. Currency*, 152 F.3d at 497 ("With respect to Article III standing, . . . a claimant must have a colorable ownership, possessory or security interest."); *see also De Saro v. United States*, 173 F. App'x 760, 764 (11th Cir. 2006) ("The constitutional standing requirements are forgiving, and any colorable claim on the property generally suffices.").

The district court reached the opposite conclusion by evaluating the extent of Knox County's alleged interest, determining that the United States had already promised to pay Knox County the full amount that it was due, and thereby concluding that Knox County lacked standing to file a claim because (1) Knox County was guaranteed to receive all that it was legally owed, and (2) Knox County lacked a legally cognizable interest in pursuing anything more.  The district court's approach falters on several levels.  First, the court improperly transformed a question on the merits—what is the full extent of Knox County's interest in the seized properties?—into a question of jurisdiction.  The district court had no need to inquire, for the purposes of assessing standing, into the validity of Knox County's alleged interest in securing tax revenue after entry of the final order of forfeiture because Knox County adequately stated an interest in securing the tax revenue that accrues up until the final entry of forfeiture—an interest that would be injured if the property were forfeited to the U.S. government without compensating Knox County for the value of its lien.  *See $515,060.42 in U.S. Currency*, 152 F.3d at 497 (in the civil forfeiture context, holding that a "colorable . . . security interest" in property suffices to show Article III standing to file a third-party claim); *cf. United States v. Emor*, 785 F.3d 671, 676 (D.C. Cir. 2015) ("[S]eizure of property without due process is the quintessential injury.").

Second, the district court erred in determining that any injury Knox County would suffer by virtue of the forfeiture could not be redressed by a court order.  A claimant satisfies Article III's redressability requirement by showing there is "a likelihood that a court decision in the [claimant's] favor will redress the injury alleged."  *See Greater Cincinnati Coal. for the*

*Homeless v. City of Cincinnati*, 56 F.3d 710, 715 (6th Cir. 1995). Here, any number of court orders would likely redress the injury Knox County would suffer if its tax lien were not satisfied, including an order directing an interlocutory sale of the seized property or an order directing the U.S. government to pay Knox County the full value of its lien, whatever that may be.

The district court's contrary assessment of redressability was premised on its understanding that a court order would not "significantl[ly] increase . . . the likelihood that the [county] would obtain the relief that directly redresses [its] injury" because the federal government had already agreed to pay Knox County the full value of its lien, with interest. *See* R. 119 (Dist. Ct. Op. at 20) (Page ID #1012) (quoting *Hamdi*, 620 F.3d at 628 n.15). But the U.S. government's offer to pay Knox County an amount that the federal government believes will fully satisfy Knox County's interest does not strip the lower court of jurisdiction to hear Knox County's claim, particularly when the county contends that more is due. *See Mey v. N. Am. Bancard, LLC*, 655 F. App'x 332, 336 (6th Cir. 2016) (a defendant's tender of funds that fails to satisfy fully a plaintiff's demand for relief does not moot the plaintiff's claims); *see also Scott v. Westlake Servs. LLC*, 740 F.3d 1124, 1126 (7th Cir. 2014) ("[I]f the defendant offers to pay only what it thinks might be due, the offer does not render the plaintiff's case moot."). Moreover, even if the district court properly determined that the U.S. government's offer fully satisfied Knox County's financial interest in its lien, an offer to pay the value of the lien once the properties were transferred to the United States and sold does not satisfy Knox County's professed interest in receiving its interest sooner, via an interlocutory sale of the seized properties. *See Mey*, 655 F. App'x at 336 (holding that a tender purportedly equivalent to the full value of the plaintiff's damages "does nothing to satisfy [the plaintiff's] request for injunctive relief").[2]

Finally, the district court erred in finding—as an additional basis for denying Knox County's second claim—that "the County lacks standing to contest its right to receive any penalties whatsoever" by virtue of Tennessee law. *See* R. 119 (Dist Ct. Op. at 22) (Page ID #1014). The district court read Tennessee's tax code to mean that penalties on back taxes begin

---

[2]This is not to say that Knox County is entitled to an interlocutory sale, merely that it had standing to request one.

accruing only upon the filing of a tax suit, and because the present case involves a "forfeiture proceeding ancillary to a criminal prosecution" as opposed to a civil tax suit, no penalties had yet accrued. *See id.* But while "additional penalt[ies]" do not begin accruing until the county files suit to enforce its tax lien, *see* Tenn. Code Ann. § 67-5-2410(a)(1)(B), any penalties that are triggered by the filing of the suit are automatically added to the county's tax lien, *see* Tenn. Code Ann. § 67-5-2101(a) (describing the county's lien as encompassing "[t]he taxes assessed . . . and all penalties, interest, and costs accruing thereon"). Thus, if Knox County has initiated "tax suits for each relevant year of back taxes" in state court, as it claims to have done in its appellate briefing, *see* Appellant Br. at 27, then the additional penalties attached automatically onto the county's lien and thereby became part of Knox County's legally cognizable interest in the property. The United States does not address this point in its briefing before this court.

Rather than resolving this case at the jurisdictional stage, the district court and the parties should have followed the procedures set forth in 21 U.S.C. § 853(n) and the Federal Rules of Criminal Procedure. Though we leave it to the district court to determine Knox County's interest in the Jones Road Parcel in the first instance, we offer a few legal principles to guide the analysis.

First, Knox County is not automatically entitled to a hearing following its filing of a petition under 21 U.S.C. § 853(n)(2). Rather, Federal Rule of Criminal Procedure 32.2 authorizes the U.S. government to file a motion for summary judgment on Knox County's claim, which the district court may resolve before holding a hearing.[3] The district court may find that it

---

[3]Federal Rule of Criminal Procedure 32.2(c)(1) authorizes the court to dismiss the petition for "lack of standing, for failure to state a claim, or for any other lawful reason." FED. R. CRIM. P. 32.2(c)(1)(A). Once any motions filed under Rule 32.2(c)(1)(A) are disposed of, the court "may permit the parties to conduct discovery . . . if the court determines that discovery is necessary or desirable to resolve factual issues. When discovery ends, a party may move for summary judgment under Federal Rule of Civil Procedure 56." *Id.* R. 32.2(c)(1)(B).

Nothing in Rule 32.2(c)(1) precludes parties from pursuing summary judgment without first filing a motion to dismiss the petition for lack of standing or for failure to state a claim. Nor must the court authorize discovery before considering a party's summary judgment motion. The decision to allow discovery is expressly discretionary in Rule 32.2(c)(1). Though summary judgment is generally "improper without discovery," we have previously held that, in certain circumstances, that "general rule" falls flat. *See March v. Levine*, 249 F.3d 462, 473 (6th Cir. 2001). Here, it remains in the district court's discretion to determine whether discovery would be "necessary or desirable to resolve factual issues" in the case. FED. R. CRIM. P. 32.2(c)(1)(B).

is able to ascertain the scope of Knox County's legal interest in the property at the summary judgment stage.

Second, the U.S. government's offer to pay Knox County the full value of its lien as of the date of the final entry of forfeiture, plus interest, stems from its policy and practice of making such payments. *See* Appellee Br. at 3 n.2. The federal government's policy may be more generous than the criminal forfeiture statute requires. Under 21 U.S.C. § 853(c), "[a]ll right, title, and interest in [seized property] . . . vests in the United States upon the commission of the act giving rise to forfeiture under this section." 21 U.S.C. § 853(c). If Knox County's tax lien became effective after Hall's unlawful use or purchase of the property, then the U.S. government's interest in the property predates Knox County's interest, and Knox County's "tax lien is not a 'superior' interest within the meaning of § 853(n)(6)(A), because the government's interest vested [first]." *See SKL Investments, Inc. v. United States*, No. 13-MC-38, 2014 WL 4365297, at *5 (W.D. Tenn. Sept. 2, 2014). Though the United States is bound to abide by the promises of payment it has made in this case, *cf. United States v. Williams*, 612 F.3d 500, 510–11 (6th Cir. 2010) (recognizing that estoppel doctrines may, in certain cases, be invoked against the government), the district court may need to determine whether and to what extent Knox County is entitled to anything more than what the United States has offered.

Assuming that the United States must pay Knox County the full value of the county's tax lien, either because of the U.S. government's policy or by virtue of § 853(n)(6)(A), the district court should find, as a matter of law, that Knox County's lien does not encompass tax revenue accrued after the entry of a final order of forfeiture. Upon entry of an order of forfeiture and disposition of any petitions by the court, "clear title" to the seized property passes to the United States. 21 U.S.C. § 853(n)(7). At that point, Knox County's right to assess taxes on the property is preempted by the Supremacy Clause. *See McCulloch v. Maryland*, 17 U.S. (4 Wheat.) 316, 431–37 (1819). The value of Knox County's tax lien is therefore limited to "the taxes assessed" before the final order of forfeiture, "and all penalties, interest, and costs accruing thereon." *See* Tenn. Code Ann. § 67-5-2101.

Last, we highlight an area of dispute between the parties that may require resolution. Knox County contends that it is entitled, by virtue of its lien, to continue receiving interest and

penalty payments that accrue after entry of a final order of forfeiture on taxes assessed before forfeiture is finalized. *See* R. 115 (Reply to United States' Response to Objections to R & R at 9) (Page ID #962). Though we cannot identify any penalties to which Knox County might be entitled after entry of a final order of forfeiture, *see* Tenn. Code Ann. § 67-5-2410 (imposing what appears to be a one-time penalty upon the filing of a tax suit, which Knox County either has or has not already initiated), the current version of Tennessee's tax code calls for interest to accrue monthly on delinquent taxes, *see* Tenn. Code Ann. § 67-5-2010. If Knox County's lien does in fact constitute a "superior interest" under 21 U.S.C. § 853(n)(6)(A), the district court must ascertain whether the United States is required to pay this continuously accruing interest, and if so, whether that obligation runs until the United States sells the properties or instead until Knox County receives payment on the delinquent taxes. We leave it to the district court, with the aid of briefing by the parties, to address this question in the first instance, if necessary.

Once the district court determines the scope of Knox County's legal interest, it must then "amend the order of forfeiture in accordance with its determination." 21 U.S.C. § 853(n)(6). As it currently stands, the final order of forfeiture fails to account for Knox County's interest in the Jones Road Parcel. *See* R. 121 (Final Order of Forfeiture at 1–10) (Page ID #1023–32). We therefore vacate the final order of forfeiture and remand this case for proceedings consistent with this opinion.

## C. Denial of Motion for Interlocutory Sale

The district court did not abuse its discretion in denying Knox County's motion for an interlocutory sale. Motions for interlocutory sales in criminal forfeiture proceedings are governed by Federal Rule of Criminal Procedure 32.2(b)(7), which in turn directs courts to act "in accordance with Supplemental Rule G(7) of the Federal Rules of Civil Procedure." FED. R. CRIM. P. 32.2(b)(7). The advisory committee notes to the Federal Rules of Civil Procedure, in turn, state that "court[s] must carefully weigh the competing interests in each case" when deciding whether to direct an interlocutory sale of property subject to forfeiture. FED. R. CIV. P. SUPP. G(7) advisory comm. notes. However, because Rule G(7) "does not state any criteria to guide the judge, . . . the judge can range widely in deciding what factors to consider, and what weight to give them, in making his ruling. He has, in other words, considerable discretion,

which implies a deferential standard of appellate review." *United States v. Approximately 81,454 Cans of Baby Formula*, 560 F.3d 638, 641 (7th Cir. 2009) (cited approvingly in *Chaffey Lane*, 699 F.3d at 960). Here, the district court considered relevant factors and made sufficient factual findings to justify its decision to deny Knox County's motion for an interlocutory sale.

Knox County faults the district court for resting its decision, in part, on the fact that the case "involves twenty-two parcels of Knox County real property, five known claimants, and countless unknown ones," and therefore presents "a significant risk of conflicting interests." R. 119 (Dist Ct. Op. at 26) (Page ID #1018). According to Knox County, the district court abused its discretion when it considered "the risk of conflicting interests" rather than on a finding of actual conflict. Appellant Br. at 32. Knox County's argument falls flat for two reasons. First, Knox County provided the district court with no indication of its own interests or the potential interests of other affected parties in its motion requesting the interlocutory sale. *See* R. 106 (Motion for Interlocutory Sale) (Page ID #899–900). According to Knox County, the court should have "presumed" from the absent record "that all other claimants would benefit by Knox County's request to sell these parcels by interlocutory sale." Appellant Br. at 31. Knox County offers no support for this claim, and it runs counter to the "default rule for burdens of proof" that the "burden of proof [is] . . . on the moving party." *See Baby Formula*, 560 F.3d at 641. Second, nothing in the Federal Rules prevents district courts from considering the risk of conflict when weighing relative interests. As much is clear from *Baby Formula*, where the Seventh Circuit determined that the *risk* of potential contamination in baby formula was a good enough reason to deny an interlocutory sale of the formula. 560 F.3d at 641–42.

Knox County's second objection—that the district court improperly reasoned that an interlocutory sale would "likely" lead to a lower "final sales price" than a post-forfeiture sale, Appellant Br. at 33—is similarly unavailing. Knox County contends that "the record in this case contains absolutely no factual basis to support the district court's conclusion regarding the lower price," *id.*, but the district court was entitled to presume, as a matter of basic economics, that encumbered property would likely garner a lower sales price than unencumbered property. *Cf. Lazy Y. Ranch, Ltd. v. Wiggins*, No. CV 06-340-S-MHW, 2007 WL 1381805, at *6 (D. Idaho Mar. 13, 2007) ("Examples of the types of facts that are typically taken judicial notice of include:

matters of geography, history, language and word usage, current events, [and] economics."), *aff'd sub nom. Lazy Y Ranch Ltd. v. Behrens*, 546 F.3d 580 (9th Cir. 2008). Though this court has previously found that a party's "interest in [seized] property [can] still [be] adequately protected" when a court orders an interlocutory sale, *Chaffey Lane*, 699 F.3d at 961, that does not change the fact that it "may well be that the purchase price for the [seized property] would be more if it were not sold in a forced sale," *United States v. Real Prop. & Residence Located at 4816 Chaffey Lane*, CIV.A. No. 5:08-410, 2012 WL 529239, at *2 (E.D. Ky. Feb. 17, 2012), *aff'd*, 699 F.3d 956 (6th Cir. 2012).

Knox County further argues that the district court should not be permitted to consider an inherent limitation to interlocutory sales—namely, the fact that the government must sell the properties without "clear title"—when deciding whether to direct such a sale. *See* Appellant Br. at 33–34. Knox County offers no support for this point, and the argument is otherwise unpersuasive. In assessing whether to order an interlocutory sale, it seems that a district court necessarily ought to consider whether the interests in favor of a sale, if any, outweigh the intrinsic limitations of interlocutory sales.

Finally, Knox County objects to the district court's finding that the previously identified "problems are compounded by the fact that the criminal case underlying these proceedings is one of three associated cases, all of which involve asset forfeitures," and its subsequent conclusion that "[t]he potential pitfalls of an interlocutory sale are immense." R. 119 (Dist. Ct. Op. at 26) (Page ID #1018). Though the district court's reasoning on this point is not fully articulated, it seems logical that the additional complexities associated with handling interrelated criminal actions would weigh against ordering interlocutory relief in one case while the other cases remain pending. Such reasoning does not constitute an "erroneous finding[] of fact" or a "clear error of judgment," such that the district court can be said to have abused its discretion. *See Reeb v. Ohio Dep't of Rehab. & Corr.*, 435 F.3d 639, 644 (6th Cir. 2006). And in any event, reversal is appropriate "only if we are 'firmly convinced that a mistake has been made.'" *City of St. Clairsville*, 330 F. App'x at 70 (quoting *McCombs*, 395 F.3d at 358). Given the county's failure to identify any interests in favor of an interlocutory sale in its motion and the district

court's clear identification of interests that would or could be harmed by ordering such a sale, reversal is not appropriate in this case.

## III.  CONCLUSION

Because the district court erred in determining that Knox County lacks standing to assert its interest in the seized property under 21 U.S.C. § 853(n), and thereby failed to account adequately in the final forfeiture order for Knox County's interest, the district court's final order of forfeiture is **VACATED** and this case is **REMANDED** to the district court with instructions to allow such further proceedings that are consistent with this decision.  Because the district court did not abuse its discretion in denying Knox County's motion for an interlocutory sale pursuant to Federal Rule of Civil Procedure G(7)(b)(i), we **AFFIRM** the district court's decision on that motion.

---

**CONCURRENCE**

---

HELENE N. WHITE, Circuit Judge, concurring.   I concur in all but the majority's discussion of 21 U.S.C. § 853(n)(7), which injects an  issue, and suggests that the district court should address an issue, that is not presented or addressed by the parties.  The United States does not argue that it has a superior right under 21 U.S.C. § 853(n)(7) based on the date the offense was committed,[1] and we should not direct the district court's attention to the statute in the absence of an assertion by the government that it applies.  There is simply no need to guide the analysis of the district court on an issue that is not present in the case.

---

[1]The United States asserts that "the United States does not have title until the entry of a final order of forfeiture. *See* 21 U.S.C. § 853(n)(7) and Fed. R. Crim. P. 32." Appellee Br. 18.  It does not assert additional rights under § 853(n)(7).